**WHITE BEAR DOCKING AND STORAGE, INC., Respondent,**

v.

**CITY OF WHITE BEAR LAKE, Appellant.**

No. 51788.

Supreme Court of Minnesota.

Aug. 31, 1982.

Peterson, Bell & Converse, St. Paul, for appellant.

Newcome, Wallace & Newcome, St. Paul, for respondent.

OTIS, Justice.

■ This appeal surfaces a fundamental issue bearing on the role of the judiciary in countermanding legislative decisions reached by municipal officials. The court's authority to interfere in the management of municipal affairs is, and should be, limited and sparingly invoked. There is nothing in this record which justifies the court's intervention.

The facts are for the most part undisputed. The White Bear Docking and Storage, Inc. (the Docking Company) applied for and received from the City of White Bear Lake a special use permit in 1975 allowing the company to install a 10 foot by 18 foot trailer office on the shore of White Bear Lake.

The area in question was zoned R–B, Retail Business, and required 30 foot front yard and rear yard setbacks, requirements which could not be met with the Docking Company's contemplated use. In granting the permit the City waived those requirements.

In April, 1979, the Docking Company, without seeking an amended permit, removed the 10 foot by 18 foot trailer and installed a 10 foot by 50 foot mobile trailer in its place. The City thereupon brought proceedings to enjoin the Docking Company from maintaining the mobile trailer on its lot without a new permit. The district

court issued an injunction and the company responded by applying for a permit.

By a vote of three to one the City Council rejected the company's petition, for reasons which were well within the exercise of discretion inherent in their office. Thereupon the respondent sought and obtained from the district court a writ of mandamus directing the council to issue the permit.

Members of the council expressed concern because of the failure to meet setback requirements. While willing to tolerate that inadequacy with an 18 foot trailer, the council was unwilling to extend the waiver to a 50 foot mobile trailer. In addition, the council had legitimate misgivings that a precedent would be established, since heretofore there had been no mobile trailer offices of any kind anywhere on the lakeshore. Rightly or wrongly the council was of the opinion that the location of a mobile trailer of that size, and the possible proliferation which might follow, would adversely affect the value of conventional homes in the area.

Having made an independent examination of the City's quasi-judicial decision, as we must, we do not find, as did the trial court, that the City is estopped from refusing to expand its permit; or that the City's action was arbitrary and capricious; or that the reasons assigned by the council do not have "the slightest validity" or bearing on the general welfare of the immediate area. *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn.1979); *Honn v. City of Coon Rapids*, 313 N.W.2d 409 (Minn.1981).

■ The mere fact that the trial court might have reached a different conclusion, had it been a member of the council, does not invalidate the judgment of the City officials if they acted in good faith and within the broad discretion accorded them by the ordinance itself.

■ The setting aside of routine municipal decisions should be reserved for those rare instances in which the City's decision has no rational basis. Except in such cases, it is the duty of the judiciary to exercise restraint and accord appropriate deference to civil authorities in the performance of their duties.

■ In a comprehensive consideration of the law governing standards of review in zoning matters, *Honn. v. City of Coon Rapids*, 313 N.W.2d 409 (Minn.1981), we discussed the distinction between legislative and quasi-judicial matters, such as variances and special use permits, and said:

> * * * [T]he standard of review is the same for all zoning matters, namely, whether the zoning authority's action was reasonable. Our cases express this standard in various ways: Is there a "reasonable basis" for the decision? or is the decision "unreasonable, arbitrary or capricious"? or is the decision "reasonably debatable"?

*Id.*, 313 N.W.2d at 417. We went on to point out that in special use permit cases, "reasonableness" is measured by the standards set out in the local ordinance, and not by the standards contained in the statute.

■ Here the relevant provisions of the City of White Bear Lake ordinance governing special uses are as follows:

405. ZONING CODE: SPECIAL USES

405.010. Special Uses Generally. Certain uses, *while generally not suitable in a particular zoning district*, may, under some circumstances, be suitable. When such circumstances exist, a special use permit may be granted. Conditions may be applied to issuance of the permit and a periodic review of the permit may be required.

* * * * * *

Special Use Permits may be granted or denied in any district by action of the City Council. In *granting* a special use permit, the Council shall consider the advice and recommendations of the Planning Commission and the effect of the proposed use upon the health, safety, morals, convenience, and general welfare of occupants of surrounding lands, existing and anticipated traffic conditions including parking facilities on adjacent streets and land, and the effect on values

of property in the surrounding area, and the effect of the proposed use on the Comprehensive Plan. If it shall determine that the proposed use will not be detrimental to the health, safety, convenience, morals, or general welfare of the community nor will seriously depreciate surrounding property values, and that said use is in harmony with the general purpose and intent of this Ordinance and the City Plan, the Council may grant such permits.

\*　　\*　　\*　　\*　　\*　　\*

Any change involving structural alteration, *enlargement*, intensification of use, or similar change not specifically permitted by the special use permit issued shall require an amended special use permit and all procedures shall apply as if a new permit were being issued.

White Bear Lake, Minn. Ordinance 456, ch. 405 (1968) (emphasis added).

It should be noted that the ordinance characterizes uses which require special permits as being those "generally *not* suitable in a particular zoning district \* \* \*" (emphasis added) and authorizes conditions and periodic review for amended permits as well as for initial permits. Here the original use sought and authorized was for a structure with dimensions of 10 by 18 feet only.

The ordinance directs the council to *consider* the advice and recommendations of the planning commission, but it does not *require* the commission's approval. In addition, the wording of the ordinance imposes this duty on the council only in *granting* a permit but is silent with respect to its *denying* a permit. Any structural enlargement specifically requires a permit.

In affidavits presented to the trial court three council persons commented on the detrimental effect of enlarging the use of the property. Councilman Ernest McCarty stated that the city was attempting to upgrade the area in question by alleviating a "significant traffic-pedestrian-bicycle problem"; that the parcel is undersized in depth; and if a permanent structure were sought, the size of the parcel would not be sufficient under the zoning code.

William Bennis, another councilman, voted against the permit because in his opinion the property was too small for a 10 by 45 foot trailer, and the permit would establish a precedent for placing mobile homes on the lakeshore. He stated: "In light of the fact that petitioner could not put a permanent structure 10 × 45 feet in dimension on the premises, it is only logical that a portable structure of those dimensions should not be allowed on the premises." He, too, was apprehensive of the possible proliferation of mobile homes on the lakeshore and their impact on single family lakeshore residences.

Councilwoman Donna Rask also expressed concern over failure to meet the 30 foot front and rear setbacks which would be required were the structure permanent, noting " \* \* \* that they are a logical guide in determining whether or not the parcel is of sufficient size to accommodate the 10′ × 45′ mobile home being used by petitioner as an office."

We not only find this reasoning persuasive but hold that the grounds assigned constitute a rational basis for the council's decision. Such grounds fall well within the criteria set forth in the zoning code. In a community as relatively small as White Bear Lake, city officials have the experience, competence, and capacity to measure the impact of a permit on property values and to weigh and assess similar issues without relying on expert witnesses to determine whether or not the use " \* \* \* is in harmony with the general purpose and intent of [the] zoning ordinance and the city plan".

To the extent the council's decision was influenced by esthetic considerations which might affect the value of private residences, we set forth rules which by analogy are relevant here, in *C. R. Investments, Inc., v. Village of Shoreview*, 304 N.W.2d 320, 327 (1981):

Esthetic considerations such as the architectural style and general appearance of any proposed apartment project will be a major consideration but will not be the

sole justification for approval or denial of any proposed apartment building. [Comprehensive Village Plan, Part Two, Section III, C(B) 8(b) 10].

\* \* \* \* \* \*

Nothing touches a citizen so personally as his daily environment. A healthful, safe, efficient and pleasant living area to return to at the end of the day is as essential to the well-being of a citizen as good physical conditions under which to work.

\* \* \* \* \* \*

Human values differ, social and economic status differs among areas, and certain legal restraints are present which require the setting of minimum, reasonable, and uniform standards, the "minimum" may be acceptable in one part of the community while in others, residents may desire higher standards. [Comprehensive Village Plan, Part Two, Section IV].

Accordingly the order of the district court is reversed and the writ of mandamus is quashed.

KELLEY, J., took no part in the consideration or decision of this case.

TODD, Justice (dissenting).

The duty of the judiciary to exercise restraint and to accord deference to municipal authorities in the performance of their duties is unquestioned. However, while a municipality "has broad discretionary power to deny an application for a special use permit, it cannot do so arbitrarily." *Zylka v. City of Crystal*, 283 Minn. 192, 196, 167 N.W.2d 45, 49 (1969). This is not an appeal from the denial of a zoning variance, nor are we asked to review the denial of an original application for a special use permit. Respondent's use of the marina property is compatible with the use generally authorized within the zoning district, and a special use permit has already been granted—a permit which authorizes the use of an office trailer. This case simply involves a request by respondent to amend its special use permit so that a larger office trailer can be located on the premises. Because I find the City of White Bear Lake acted without any rational basis in denying respondent's application for an amended special use permit, I dissent.

In 1975, respondent, White Bear Docking & Storage, Inc., applied for and was granted a special use permit to operate a marina in the City of White Bear Lake. The permit authorized operation of the marina on land zoned "R–B", Retail Business. The special use recognized by the permit was listed in the City's zoning code as a "commercial recreational establishment." Respondent's application for the permit noted the size of an office trailer to be located on the property as "approximately 10′ × 20′."

Respondent operated its marina pursuant to the special use permit from February, 1975 through April, 1979, using a 10-foot by 18-foot trailer as an office. In May, 1979, respondent replaced its original trailer with a larger trailer measuring 10 feet by 50 feet, and thereafter submitted an application for an amended special use permit. This permit request was unanimously approved by the City Planning Commission, but on February 12, 1980, the City Council denied respondent's application, ostensibly for two reasons. These reasons were stated as follows:

1. The site is too small for a 10′ × 50′ trailer; and

2. The trailer is, in fact, a mobile home, of which there are none on White Bear Lake and approval of this mobile home would be setting a precedent for future applications to place mobile homes on the shores of White Bear Lake.

The power of the City to regulate land use and development, while quite broad, is not unlimited. Our legislature has delegated to municipalities the authority to regulate the "size of buildings and other structures, the percentage of a lot which may be occupied, [and] the size of yards and other open spaces", but only "[f]or the purpose of promoting the public health, safety, morals and general welfare" of the community. Minn.Stat. § 462.357, subd. 1 (1980). Accordingly, section 405.010 of the City's zon-

ing code, which governs the granting of special use permits, provides:

> Special Use Permits may be granted or denied in any district by action of the City Council. *In granting a special use permit, the Council shall consider the advice and recommendations of the Planning Commission* and the effect of the proposed use upon the health, safety, morals, convenience, and general welfare of occupants of surrounding lands, existing and anticipated traffic conditions including parking facilities on adjacent streets and land, and the effect on value of property in the surrounding area, and the effect of the proposed use on the Comprehensive Plan. *If it shall determine that the proposed use will not be detrimental to the health, safety, convenience, morals, or general welfare of the community nor will seriously depreciate surrounding property values, and that said use is in harmony with the general purpose and intent of this Ordinance and the City Plan, the Council may grant such permits.*

White Bear Lake, Minn., Ordinance 456, ch. 405 (April 9, 1968). [Emphasis added]. In the present case, the City was therefore *required,* by statute and by the provisions of its own zoning code, to grant respondent's request for an amended special use permit unless it found the proposed use would in some way violate the provisions of its ordinance. *C. R. Investments, Inc. v. Village of Shoreview,* 304 N.W.2d 320 (Minn.1981). This court has previously indicated that while an applicant for a special use permit carries the burden of proof, it is a much lighter burden than that cast upon an applicant for a zoning variance. *See Westling v. City of St. Louis Park,* 284 Minn. 351, 170 N.W.2d 218 (1969). The difference, of course, lies in the fact that while a variance is required for a use which has been legislatively prohibited within a zoning district, except in very unusual circumstances, a "special use" is one which is generally permitted within the zoning district, yet is subject to reasonable control. As we said in *Zylka v. City of Crystal:*

Unlike a variance provision which permits particular property to be used in a manner forbidden by the ordinance by varying the terms of the ordinance, a special-use provision permits property, within the discretion of the governing body, to be used in a manner expressly authorized by the ordinance.

*Id.* at 195–196, 167 N.W.2d at 49 (footnote omitted). In this case, where only an amendment is being sought to an existing special use permit, the burden on the applicant should be further lightened.

In *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 417, (Minn.1981), we have articulated and summarized our decisions relating to municipal zoning questions. Under the rules established in *Honn* this case clearly involves an issue quasi-judicial in nature as opposed to a legislative decision. The applicable test to be applied is the rational basis test and is not a question limited to consideration of whether the city officials have acted wilfully and maliciously, which is the test adopted by the majority opinion.

The first reason advanced by the City Council for denying respondent's permit application is that the marina lot is simply "too small" to accommodate a 50-foot trailer. The majority briefly highlights the Council's alleged concern that the larger trailer would not meet 30-foot front and rear-yard setback requirements for retail business property, but in *affidavits filed with the lower court the City concedes the setback requirements do not even apply to the office trailer.* Instead, the Council simply considered the fact that *if* the trailer had been a permanent structure to which the setback requirements applied, the trailer could not be located on the property because the lot is too small. I find the Council's reference to setback requirements in this case rather puzzling in light of the fact that the setback distances for a 50-foot trailer would be the same as those for the 18-foot trailer authorized by the Council in 1975, the two trailers being of equal width. There is no evidence that while a setback for an 18-foot trailer was acceptable, a simi-

lar setback for a 50-foot trailer would not be. This lack of evidence is understandable since, as the City concedes, the setback provisions are inapplicable.

The Council's conclusion, however, begs the question: why is the marina lot too small? Absent from the record is any evidence showing how a 50-foot office trailer located on respondent's property would adversely affect the White Bear Lake community. There is no evidence the larger trailer would create traffic, parking, population density or noise problems, or would in any other way endanger the health or safety of city residents. Nothing in the record supports an inference that city residents would even be inconvenienced. I find no evidence to prove the larger trailer would result in the slightest depreciation of surrounding property values. While the City Council may not have found the larger trailer aesthetically pleasing, this court has never held that aesthetic considerations *alone* are sufficient to justify an exercise of the police power in the zoning area. Instead, aesthetic objectives may be taken into consideration as long as the zoning restriction "is reasonably related to promoting the general welfare of the community or any other legitimate police-power objective. * * * "[1] *Naegele Outdoor Advertising Co. v. Village of Minnetonka*, 281 Minn. 492, 499, 162 N.W.2d 206, 212 (1968). *See County of Pine v. Department of Natural Resources*, 280 N.W.2d 625 (Minn.1979). Without other evidence tending to prove the 50-foot office trailer would be detrimental to the health, safety, or general welfare of the community, the City Council's own feeling as to the aesthetic value of the larger trailer cannot alone justify the denial of respondent's amended special use permit.

I am compelled to summarily reject the second reason advanced by the City for denying respondent's permit application; that is, that approval of a larger office trailer on respondent's marina property

"would be setting a precedent for future applications to place mobile homes on the shores of White Bear Lake." This purported reason, characterized by the majority as the product of "legitimate misgivings," I view as highly speculative and lacking any factual basis in the record. This is not respondent's first request to place a trailer on the property; the Council authorized the use of a trailer on the marina property back in 1975. Furthermore, respondent's request for an amended special use permit has *no* bearing upon the City's power to prevent any possible future proliferation of mobile homes which might adversely affect the value of residential property. Respondent's marina is located in a district zoned for retail business activity, *not* residential development. According to Councilman Chesebrough, the lakeshore area of the marina is the only district zoned for retail business on the lake within the City of White Bear Lake. There is no evidence in the record showing a larger trailer on respondent's property would adversely affect property values in the surrounding area—residential or business. Viewed in proper light, the City Council's domino theory simply has no basis in law or fact, and therefore cannot support the denial of respondent's application for an amended special use permit. Furthermore, the legislative decision as to the use of a trailer on this property was made in 1975. Thus, in 1979 this issue was not even appropriate in considering the request to amend the size of the trailer to be used. If there was a proliferation problem, the change in size is totally unrelated to that problem.

Respondent, White Bear Docking & Storage, Inc., has for over 4 years utilized an 18-foot trailer in a business located on property zoned for retail business use. Contrary to the unanimous recommendation of the City's own Planning Commission, and for reasons I find both highly speculative and

---

1. The great majority of states have refused to accept pure aesthetic zoning as a proper exercise of the police power. *See* 3 P. Rohan, *Zoning and Land Use Controls* § 16.04[1] at 16–49 (1981). Whether this court should abandon the majority view and join with the few states which have accepted a doctrine of pure aesthetics is an issue which has not been properly presented to or considered by this court.

lacking factual support in the record, the City Council has refused respondent permission to replace its smaller trailer with a larger trailer which would accommodate the marina's office, retail sales, and storage area. While this court has in the past recognized the power of a municipality to restrict the use of mobile homes where the restriction reasonably relates to the protection of the health, safety, and general welfare of the people, *State v. Larson*, 292 Minn. 350, 195 N.W.2d 180 (1972), I find in this case the City Council's denial of respondent's request to replace a smaller office trailer with a larger office trailer on property zoned for retail business activity to be totally irrational. For this reason, I would affirm the judgment of the trial court.

I further express my deep concern that the effect of the majority opinion is to overrule *sub silentio* a long series of cases which have carefully constructed the role of the judiciary in reviewing municipal actions in the areas of zoning, variance and special use permits. The cornerstone of these decisions has rested upon the premise that the municipal actions cannot be irrational. The majority opinion, in the view of this writer, now approves arbitrary and capricious acts and apparently substitutes a new standard. I cannot conceive of any municipal action that could be overturned by a court applying the standard adopted in this case. The reasons given for denying the amended special use permit have no basis in fact, are irrelevant, and can only be classified as arbitrary and capricious and totally irrational.

AMDAHL, Justice (dissenting).

I join in the dissent of Justice Todd.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Todd.