John F. SWANSON, et al., Respondents,

v.

CITY OF BLOOMINGTON,
Petitioner, Appellant.

No. C3–86–782.

Supreme Court of Minnesota.

March 25, 1988.

David R. Ornstein, Bloomington City Atty., Eric R. Berg, Associate City Atty., Henry E. Wieland, Asst. City Atty., Bloomington, for appellant.

Matthew L. Fling, John J. Waters, Bloomington, Vance B. Grannis, Jr., South St. Paul, for respondents.

Stanley G. Peskar, St. Paul, amicus curiae.

## OPINION

WAHL, Justice.

John Swanson and Danald Cadmus brought a declaratory judgment action in Hennepin County District Court challenging the Bloomington city council's denial of an application to subdivide a residential lot in the Timberglade 2nd Addition into two residential lots. Swanson and Cadmus sought to establish that the city's action was arbitrary, capricious and unreasonable and they requested an order that would compel subdivision or, in the alternative, would find that there was a taking. The district court, after a review of the record, granted summary judgment to the city. The court of appeals reversed and remanded, 395 N.W.2d 719 (1986), holding that respondents were entitled to pursue discovery and to present additional relevant evidence to the district court. We reverse and reinstate the judgment of the trial court.

The Timberglade subdivision of the city of Bloomington is unique in its densely wooded, secluded character and serves as wildlife as well as human habitat. Its single family homes are typically located on sites exceeding one acre. For thirty years, from the inception of the Timberglade subdivision until two or three years before the present suit was instituted, landowners there were governed by a restrictive covenant which prohibited subdivision of the large lots and protected its wooded, natural environment.

Danald Cadmus is the fee owner of the real property at 15 Timberglade Road in the Timberglade subdivision. John Swanson is the contract purchaser of the property and has resided there since October 1984. The property consists of a residential lot of approximately 46,000 square feet with a single-family house. Cadmus applied for approval of a preliminary and final plat subdividing the lot into two residential single-family lots. The city council (hereinafter council) held public hearings and received written reports from the city's Director of Planning and the City Forester. The Director of Planning described the likely results of the creation of a new homesite —jeopardy to the vegetation on the lot, stress on the vegetation of the surrounding properties, increased possibility of tree disease and wind damage—and recommended that the subdivision request be denied. The City Forester concurred. A wildlife biologist, testifying on behalf of the neighbors, similarly described the disruptive effect of clearings in the woodland area, loss of windbreak benefits and loss of wildlife habitat. A number of neighbors spoke opposing the subdivision. Speaking in favor of the subdivision were Cadmus, Swanson, and a landscape architect presented by Cadmus and Swanson's attorney.

The city council based its decision to deny approval of the preliminary and final plat on section 16.05.01(e) of the Bloomington City Code, which provides:

(e) In the case of all plattings, the Planning Commission or the Administrative Subdivision Review Committee, whichever is applicable, shall recommend denial of, and the City Council shall deny, approval of a preliminary or final plat if it makes any of the following findings:

(1) That the proposed subdivision is in conflict with applicable general and specific plans.

(2) That the design or improvement of the proposed subdivision is in conflict with applicable development plans.

(3) That the physical characteristics of the site, including but not limited to topography, vegetation, susceptibility to erosion and siltation, susceptibility to flooding, water storage, and retention, are such that the site is not suitable for the type of development or use contemplated.

(4) That the site is not physically suitable for the proposed density of development.

(5) That the design of the subdivision or the proposed improvements are likely to cause substantial environmental damage.

(6) That the design of the subdivision or the type of improvements will be detrimental to the health, safety, or general welfare of the public.

(7) That the design of the subdivision or the type of improvements will conflict with easements of record or to easements established by judgment of a court.

Specifically, the council made findings under paragraphs (3), (5), and (6) of section 16.05.01(e), concluding that the proposed subdivision would result in substantial destruction of vegetation on the subject site, creating a large opening which would not only be detrimental to the property in question but would also jeopardize existing vegetation on adjacent properties. The council adopted the findings and memoranda of the Director of Planning and the City Forester and, on the basis of the significant destruction of vegetation made the finding in § 16.05.01(e)(3), that the site was not suitable for the type of development or use contemplated. The council made the finding in § 16.05.01(e)(5) on the basis of the environmental disruption to the site and to the entire Timberglade subdivision that would be created by approving the plat. Finally, the council noted that neighboring property owners were unanimous in their opposition to the proposed plat, and determined that the planned removal of trees and vegetation from the subject property would disrupt the overall integrity of the woodland and thereby have a negative effect on the general welfare of the persons residing in the Timberglade subdivision. On this basis the council made the finding in § 16.05.01(e)(6).

Swanson and Cadmus brought this action in district court challenging the denial of the subdivision application. The city moved for summary judgment on the record before the council, including transcripts of the hearings and other evidence submitted. The plaintiffs moved for an order compelling discovery and asked to submit additional evidence which they hoped to acquire through discovery. The district court determined that because an accurate verbatim record of the complete hearing before the city council was available, it was proper to decide the case based on a review of the record rather than by conducting the trial required of the city in *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn.1981). To require a trial de novo in this case, in the district court's view, would infringe on the decision-making process of the city and weigh against the policy of judicial economy. The district court reviewed the record of the council, and, finding evidentiary support for the council's findings and a rational basis for the council's decision, granted summary judgment for the city. The court of appeals reversed that judgment on the single ground that *Honn v. City of Coon Rapids* required a trial de novo to give respondents an opportunity to present relevant additional evidence when the parties had neither agreed to nor acquiesced in submission of the case by review of the record, and held that the granting of summary judgment was inappropriate. *Swanson v. City of Bloomington*, 395 N.W.2d 719, 723 (Minn. App.1986).

We granted review to examine the matter in the context of our decisions in *Honn v. City of Coon Rapids*, 313 N.W.2d 409, and *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757 (Minn.1982), to harmonize our cases, and to modify, if necessary, the procedure for review of zoning decisions set out in *Honn*. Our review is focused on two issues: first, whether a district court, in a declaratory judgment action challenging the denial of a subdivision application, may grant summary judgment based on its review of a record consisting, in this case, of a municipal body's findings and accompanying memoranda, verbatim transcripts of hearings before the municipal body, as well as memorandum submitted by the applicant; and second, whether the district court properly granted summary judgment to the city.

I.

Before we determine whether the district court in this case properly granted summa-

ry judgment on the record made by the city council, or whether *Honn* requires a trial in every such case, it is useful to reflect on our traditional approach to zoning matters. In *White Bear Docking and Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 175 (Minn.1982), we considered the role of the judiciary in countermanding zoning decisions reached by municipal officials and concluded that "[t]he court's authority to interfere in the management of municipal affairs is, and should be, limited and sparingly invoked." We reiterated the rule we had set out in *Honn v. City of Coon Rapids* governing standard of review in zoning matters: "The standard of review is the same for all zoning matters, namely, whether the zoning authority's action was reasonable * * * Is there a 'reasonable basis' for the decision? or is the decision 'unreasonable, arbitrary or capricious'? or is the decision 'reasonably debatable'?" 324 N.W.2d at 176, quoting *Honn,* 313 N.W.2d at 417.

We said that, except in those rare cases in which the city's decision has no rational basis, "it is the duty of the judiciary to exercise restraint and accord appropriate deference to civil authorities in the performance of their duties." *Id. White Bear Docking* involved a special use permit which had been denied by the city of White Bear Lake. Plaintiffs obtained a writ of mandamus from the district court directing the council to issue the permit. We reversed the order of the district court and quashed the writ, finding that the grounds for denial of the permit assigned by the council constituted a rational basis for the decision and were well within the criteria set forth in the city's zoning code. 324 N.W.2d at 177.

## II.

■ The first issue is whether a district court, in a declaratory action challenging the denial of a subdivision application, may grant summary judgment based on its review of a record consisting of a municipal body's findings, memoranda submitted by the parties, and verbatim transcripts of all hearings.

We determined in *Northwestern College v. City of Arden Hills* that the scope of review to be used for zoning matters would be the same as that used for state administrative agency decisions. 281 N.W.2d 865, 868 (Minn.1979). We indicated that the review would be of the record made before the local zoning body. That is, the review by the district court would be made on the municipal record and the supreme court would make its review on the same record. We said, quoting *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824, (Minn.1977), "[I]t is our function to make an independent examination of an administrative agency's record and decision and arrive at our own conclusions as to the propriety of that determination without according any special deference to the same review conducted by the trial court." *Id.*

Then in *Honn v. City of Coon Rapids,* we were presented with a case, appealed by the city from an adverse decision below, where the record before the trial court was completely inadequate. In that case we held that review on the record was not appropriate. 313 N.W.2d at 418.

*Honn* involved a declaratory judgment action in which the court required the parties to agree upon a record of what had occurred before the city council and present this "agreed-upon" record for review. Based on this after-the-fact record, the district court found the city's action in refusing to rezone the plaintiff's land from single family residential to multiple unit residential and commercial to be arbitrary, capricious, and unreasonable. On appeal, we found the "agreed upon" record required by the district court to be inadequate for judicial review and remanded the case for trial. *Honn,* 313 N.W.2d at 419. Concerned that city councils and zoning boards did not ordinarily make records of their proceedings as complete and as formal as those of a state agency, we set out a procedure for review of zoning matters which permitted use of a declaratory judgment action in which the parties are entitled to a trial. *Id.* at 416.

*Honn* did not directly overrule *Northwestern College* and, under its own facts,

was a proper decision but its broad language, mandating a trial in every case may go beyond what is necessary in every case. It is not unreasonable, nor unfair, where a city has failed to make a complete and adequate record of its proceedings in zoning matters to require that city to prove the basis of its decision before a district court.

We are persuaded by amicus curiae League of Minnesota Cities that *Honn* has had a salutary effect.[1] Amicus advises this court that, in reliance on *Honn*, many cities have borne the expense of verbatim transcripts of their proceedings. These cities have carefully made findings supported by transcribed evidence so that their zoning decisions, if challenged, would not be decided by a district court on the basis of evidence never considered by them. According to amicus, one city hired a state hearing examiner to take evidence in a zoning matter which resulted in a 15-day hearing and 3,487 pages of hearing transcript.

It becomes clear that this effort and expense would be wasted if every property owner whose zoning request is denied can demand that the case be retried in a district court. Such a procedure, if rigidly followed in every case, could lead to the result that a property owner, knowing the composition of a particular city council, might withhold part of the relevant evidence, knowing it could be put in when the matter came before the district court on review. Thus, a city, making every effort to afford a property owner a full and fair hearing and to produce a complete record of the basis of its council's decision, could be thwarted in exercising the power granted it by statute to determine and plan the use of land within its boundaries. Minn.Stat. § 462.351 (1982).

The court of appeals, in reversing the decision of the district court in the case before us, relied on *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757 (Minn.1982). We held in *Hubbard* the district court properly conducted the review of certain permit denials on the record because the record in that case was very clear and complete. *Id.* at 761. We noted "[w]here 'city councils and zoning boards do not * * * make records of their proceedings as complete and formal as those of a state administrative agency or commission,' the proper procedure for review before the district court provides that '[n]ew or additional evidence *may* be received at trial.' *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 415–16 (emphasis added)." *Id.* at n. 3. It was important to the *Hubbard* court, in determining the fullness and fairness of the hearing before the city council on the permit denial issue, that the plaintiffs had the opportunity, by order of the district court, to augment the record by stipulation or motion, an opportunity of which they did not avail themselves. The holding was grounded, however, on the clearness and completeness of the record on which the city council based its decision. Our conclusion that both parties acquiesced in the district court's determining both the permit denial and the constitutional issue on the record went particularly to the constitutional issue. Even had Hubbard not acquiesced, the city had already suggested a trial on the constitutional issue in its memorandum in support of its motion for partial summary judgment on the permit denial issue.[2] 323 N.W.2d at 761–762.

■ *Hubbard*, then, does not stand for the proposition that a permit denial may never be reviewed on the record absent acquiescence of the parties. Nor do we believe that *Honn* requires a trial or augmentation of the record in every case, especially in light of the response of Minnesota cities to our concerns in that case. Rather, we have concluded that a district court should establish the scope and conduct of its review of a municipality's zoning decision by considering the nature, fairness

---

1. The League of Minnesota Cities is a cooperative organization of 782 member Minnesota cities.

2. No constitutional issue was raised on appeal in Swanson's case, only the issue of whether on review of a city council's zoning decision parties are entitled to a trial or to augment the record made before the city council with additional relevant evidence.

and adequacy of the proceeding at the local level and the adequacy of the factual and decisional record of the local proceeding. Where the municipal proceeding was fair and the record clear and complete, review should be on the record. Where the municipal body has proposed formal findings contemporaneously with its decision and there is an accurate verbatim transcript of the proceedings, the record is likely to be clear and complete.

When the review is conducted on the record, the district court should receive additional evidence only on substantive issues raised and considered by the municipal body and then only on determining that the additional evidence is material and that there were good reasons for failure to present it at the municipal proceedings. The standard of review is whether the municipal body's decision was unreasonable, arbitrary or capricious, with review focused on the legal sufficiency of and factual basis for the reasons given.

Where the municipal proceeding has not been fair or the record of that proceeding is not clear and complete, *Honn* applies and the parties are entitled to a trial or an opportunity to augment the record in district court. The meaningful review to which parties are entitled requires no less.

In Swanson's case, the trial court properly based its review of the city council's zoning decision on the record. The record consisted of verbatim transcripts of the public hearings on the matter, including statements by experts on both sides; written reports by the city director of planning and city forester; and contemporaneous written findings by the city council on which the council based its decision. From this extensive record, a satisfactory review can be made. The record also demonstrates that the proceedings were fair. The matter was considered at four meetings of the city council: May 20, June 3, June 10, June 17, 1985. Swanson, Cadmus, Waters (Cadmus' attorney) and Ed Hasek, respondent's landscape architect, were all allowed to testify without any apparent time limits. Hasek's testimony alone covered four transcript pages in small print.

Swanson's witnesses were allowed to answer questions and react to the testimony of other participants. Finally, they were given every opportunity to present relevant material.

At oral argument, plaintiffs' attorney implied that certain photos and graphics were not allowed at the hearing and, therefore, should have been made available to the district court. A review of the transcript reveals, however, that plaintiff's own expert voluntarily withheld the photos. Hasek stated: "Perhaps in lieu [sic] of the late hour, I'll go through the graphics for you and if there's any further explanation needed, we'll pull the slides out." Further, both Hasek and Mayor Lindau commented on the limited usefulness of the graphics which apparently became distorted on projection. Consequently, Hasek described their content in great detail; and this verbal description, contained in the transcript, was available for review by the district court.

Swanson and Cadmus argue that, under *Honn*, in *all* cases challenging municipal decisions in zoning matters, parties should be allowed to augment the record with additional relevant evidence. They claim that they were denied this opportunity. Although they do not challenge the accuracy of the council's verbatim transcript, they argue that the record does not show the extent to which the council's decision was a response to neighborhood opposition, nor does it disclose data on similar prior applications for subdivision.

As to the first argument, the transcript contains all of the testimony given by the neighbors. Beyond that, we do not believe that evidence on the extent to which neighborhood opposition played a role is relevant. While neighborhood feeling may not constitute the sole basis for a zoning decision, it may still be taken into account. *Northwestern College v. City of Arden Hills*, 281 N.W.2d at 869. Here, the city council's resolution described the reasons for its decision and made clear that environmental concern, not neighborhood oppo-

sition, was the major reason for the denial of the subdivision application.

As to data on similar prior applications for subdivision, no claim of unequal treatment is set out, and on these facts, there would seem to be none. Swanson is not to be compared with any person ever requesting and receiving or being denied an application for subdivision in Bloomington. He is to be compared with other property owners in the Timberglade 2nd Addition of Bloomington, the unique environment of which is here at issue. For 30 years, from its inception until two to three years before Swanson's request, that environment has been protected by a restrictive covenant which prohibited subdivision of large lots. Furthermore, the moratorium on the new zoning ordinance was lifted while the council debated this subdivision application. Thus, it is unlikely that similar prior applications for subdivision have been granted.

We hold that the district court properly reviewed the municipal zoning decision on the record where the municipal proceeding was fair and the record is clear and complete.

## III.

■ The second issue is whether the district court properly granted summary judgment to the city. Since review is on the record, the question is whether the city council's decision was reasonable or whether it was unreasonable, arbitrary or capricious. *Honn v. City of Coon Rapids,* 313 N.W.2d at 417. The city council is required by the Bloomington City Code, section 16.-05.01(e)(5) to deny approval of a preliminary or final plat if it finds "that the design of the subdivision or the proposed improvements are likely to cause substantial environmental damage." The city's Director of Planning, the City Forester and a wildlife biologist all described the likely environmental effects, including loss of trees and other vegetation both on the lot and on adjacent properties, wind damage and loss of windbreak effect. The city council's finding of a likelihood of substantial environmental damage is thus supported by the evidence and provides a ra-

tional basis for the municipal decision. Such a finding is sufficient reason, under the ordinance, for denying the plat application. We hold that the district court properly granted summary judgment to the city. We reverse the decision of the court of appeals and reinstate the judgment of the trial court.

Reversed; judgment of district court reinstated.

POPOVICH, Justice (concurring specially).

While I agree with the result in this matter based on the facts here, I am concerned that by implication *Honn v. City of Coon Rapids* may be considered overruled completely. In my opinion, that would be an inappropriate conclusion.

1. I agree with the court of appeals' analysis of *Honn* to provide for a trial to review a zoning matter. This court now circumscribes a full trial as required by *Honn* when the record of a municipal proceeding was fair, clear and complete; finding under the facts of this case that occurred. That, of course, was not the law when the court of appeals considered this matter. Thus, this court now modifies *Honn* to the extent that a full trial de novo is not required in certain cases and the court of appeals could not have known when it decided this matter that *Honn* was to be modified, as we now do. It correctly applied the law as it then existed, in my opinion. New law and new interpretations are properly the function of this court.

2. I have no quarrel with this court's desire to reduce trials de novo in district court and to avoid courts' infringing on the decision-making process of municipalities. That is part of this court's function—to outline, circumscribe and guide the judicial system as part of its supervisory and law development powers. *Honn* had an inadequate record for judicial review, so this court remanded and set out a procedure for reviewing zoning matters. That procedure is still good law and still remains applicable in future cases, but this court now circumscribes a full trial when the record is fair and complete.

3. Thus, in future cases trial courts, before denying a full trial, must determine whether the record before the municipality meets this new criterion. A record before a municipality might be fully transcribed, but were the proceedings adequate, fair and complete? This involves determining: were hearing examiners utilized in appropriate proceedings? were witnesses subject to questioning by other parties? was there foundation for opinions expressed? were offers of proof permitted? were matters outside the record relied on? were appropriate continuances permitted? was relevant evidence received? were complete contemporaneous findings made to support the municipalities' decision? and other such considerations. In other words, the trial court must determine whether the hearing itself was fair and adequate and if the parties had a full opportunity to present their views, or whether the proceedings reflected the will of the decision-makers and not their judgment (majority opinion at 313).

4. In the June 17, 1985, resolution adopted by the city council here, among other factors was a statement to the effect the council also relied upon its experience and knowledge of the area, without greater specificity. I don't know what that was. In the future, such general statements should be augmented by proper findings, joined in by a majority of the governing body. Parties should know exactly what the decision-makers relied on. The test isn't just verbatim transcripts and neighborhood opposition alone. Here, the rest of the record justifies the result expressed in this case.

YETKA, Justice.

I join in the special concurrence of Mr. Justice Popovich.