**NORTHERN STATES POWER COMPANY, Appellant,**

v.

**BLUE EARTH COUNTY, and Mankato Citizens Concerned with Preserving Environmental Quality, Inc., ("MCCPEQ"), et al., intervenors, Respondents.**

**No. C5–91–202.**

Court of Appeals of Minnesota.

Aug. 20, 1991.

Review Denied Oct. 11, 1991.

Kelton Gage, Blethen, Gage & Krause, Mankato, for appellant.

Howard F. Haugh, McLean Peterson Law Firm, Mankato, for Blue Earth County.

Rebecca L. Wessman, Mankato, for Mankato Citizens concerned with preserving Environmental Quality, Inc., et al.

Considered and decided by CRIPPEN, P.J., and NORTON and PETERSON, JJ.

## OPINION

CRIPPEN, Judge.

Repeating a challenge unsuccessfully brought before the trial court in certiorari proceedings, appellant Northern States Power questions respondent Blue Earth County's decision to deny an ash landfill operation license. We reverse.

## FACTS

In February 1990, the County Board denied Northern States' application for a solid waste disposal license.[1] Northern States sought certiorari review of the board's decision. The trial court granted the application of Mankato Citizens Concerned with Preserving Environmental Quality, Inc. and Katy Wortel to intervene in these proceedings. The court affirmed the county's denial of Northern States' license application based on its review of a stipulated record.

Northern States desires to construct a landfill to store ash generated from the burning of refuse derived fuel. The proposed landfill site is a 34–acre tract within the existing Blue Earth Ponderosa Landfill, 350 feet east of the Blue Earth River. The proposed facility is to be protected by two polyethylene membrane liners. Leachate produced when water falls on the ash will be collected by a pipe network running through a sand drainage layer into a collection tank. This tank contains a secondary leak system. There also will be monitoring wells located around the perimeter of the site to detect any groundwater contamination.

The board heard extensive testimony on the public health, safety and welfare ramifications of the proposed facility. Witnesses included county residents, members of the Blue Earth County Medical Society, representatives from the Minnesota Pollution Control Agency (MPCA), and members of respondent intervenor Mankato Citizens Concerned with Preserving Environmental Quality. The most extensive expert testimony came from staff of Malcolm Pirnie, Inc., an independent engineering firm hired by the county to assess the project.

Because water quality will be affected only if (1) there is a risk of leakage from the facility and (2) leachate content will have an adverse affect on river water, these are the two topics of testimony most material to this appeal.

*Risk of leakage.*

Malcolm Pirnie's report and expert testimony assessed the risk that the liner would leak, and if so, whether the leak would be detected. The report noted as an area of concern the complexity and variability of soils on the site, stating "it is difficult to predict leakage pathways or determine where to monitor for leakage into groundwater." Because of the soil structure, Malcolm Pirnie concluded that the site was not an inherently ideal site for the landfill, but observed that it could be engineered for long term reliability.

The report also noted that composite liners such as the ones proposed by Northern States will not degrade and are very efficient and reliable in collecting leachate.[2] Liner failures are rare and usually attributable to human error in construction or operation of the facility.

To address the soil problem, Malcolm Pirnie recommended that Northern States add the second complete polyethylene liner.

1. Northern States simultaneously sought a required permit from the Minnesota Pollution Control Agency. The Agency granted this permit in January 1990.

2. The report noted that no liner has a 100% effectiveness probability, but if constructed properly, the proposed liner system has a 95–99% probability of reliability, and the second liner will improve reliability.

Appellant accepted this recommendation.[3] To address problems in quality control during construction of the facility, Malcolm Pirnie recommended that the county have independent engineers monitor phases of conservation and initial operation. Northern States agreed to this condition as well.

*Effects of Leachate if Leaked into Area Waters.*

The board received reports from the MPCA assessing the quality of leachate produced in ash landfills. No field tests of the leachate exceeded hazardous waste guidelines. The MPCA tests analyzed comparable leachate produced by a similar storage facility in Red Wing, Minnesota. The tests assumed a worst case scenario to determine effects on the Blue Earth River in the event of discharge into it: (1) a low river level; (2) a high volume of leachate; and (3) leachate contamination twice that of the Red Wing plant. Even with these assumptions, the concentrations in the river would be within standards set by the National Center for Disease Control. The MPCA thus concluded that even if leachate is discharged into the river, there would be no perceptible increase in the river's contaminants.

At a public hearing on February 13, 1990, the board denied the license without written findings but with recorded observations from four of the five commissioners. Commissioner Landkamer expressed concern with the site, stating "[Malcolm Pirnie said] this is not an ideal site. The site is only five and one-half feet above groundwater and 350 feet from the Blue Earth River." She also expressed concern about the proximity to Mankato's water supply. Commissioner Bergemann indicated that he visited with approximately 45 constituents, most of whom either did not know or care about the proposed ash disposal site. He also expressed his concern "for the health and welfare of all living things." Chair Tacheny summarized the input received by the board, and stated "[Malcolm Pirnie] did say that they felt the site was not the best

site for an ash landfill, but that it could be engineered to be a good site."

## ISSUE

Is there sufficient evidence to sustain the County Board determination?

## ANALYSIS

■ When reviewing municipal zoning decisions, this court must independently examine the record before the municipality without deference to the review conducted by the trial court. *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979) (citing *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn. 1977)).

■ Municipal decisions should be reversed only in "rare instances" where the decision has "no rational basis." *White Bear Docking & Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982). The municipal decision should stand unless the reasons given for its decision are legally insufficient or without factual basis. *Northwestern College,* 281 N.W.2d at 868; *see C.R. Investments, Inc. v. Village of Shoreview,* 304 N.W.2d 320, 328 (Minn.1981) (reversing denial of conditional use permit to construct multiple unit dwelling because of traffic and parking concerns where developer had agreed to eliminate these problems); *Scott County Lumber Co. v. City of Shakopee,* 417 N.W.2d 721, 728 (Minn.App.1988) (reversing denial of conditional use permit to operate a gravel pit because neighbors opposed it, where all experts recommended granting the permit), *pet. for rev. denied* (Minn. Mar. 23, 1988).

■ Appellant contends there was no significant evidence before the board that the landfill would leak, nor any evidence that leachate flowing into area waters would be dangerous. Appellant's contentions are correct. Malcolm Pirnie stated that although no liner has a zero percent chance of leaking, Northern States' initial

---

3. Northern States initially proposed a single liner facility with a back-up system of collection

lysimeters below critical areas of the liner.

liner system proposal would have only a one to five percent chance of leaking and a second liner would make leakage a remote risk. Malcolm Pirnie stated that most leakage problems occur due to poor quality control during construction and initial operation. Appellant agreed to allow independent engineers to monitor these phases on behalf of the County.

If leakage occurred through the liners, there was no evidence that the leachate could dangerously contaminate area waters. All tests indicated that in the event of a discharge into the Blue Earth River, contaminant levels would remain within federal guidelines.[4]

Malcolm Pirnie's concerns that the site is not 'ideal' were overcome by appellant's agreement to make suggested engineering changes. Also, although Malcolm Pirnie was concerned that leaks would go undetected because of the complex soil structure on the site, this concern is not material in the absence of evidence that the facility will leak or that leakage will cause harmful pollution.

Although other witnesses testified, none offered evidence that the liner would leak or that leachate would be hazardous to area waters. Residents testified that tornadoes could blow the ash out of the landfill. Environmentalists suggested that increased recycling would make burning garbage and landfilling the ash unnecessary. Doctors testified that lead intake in humans can cause neurological damage.

■ The record does not support a finding that the landfill will leak or that leakage will be dangerous, and the commissioners did not make such findings in rejecting the permit. One commissioner expressed concern about the proximity of Mankato's water supply, but did not find that leakage would occur or be harmful. Because the board's decision is not supported by the record, we must reverse its denial of a solid waste disposal license to appellant.

Northern States requests this court to order respondent to issue the license, rather than remand the case for further findings. We are not required to remand for adequate findings in all cases reversing a zoning authority. *City of Barnum v. County of Carlton*, 394 N.W.2d 246, 250 (Minn.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986). For example, the court may decide not to remand where there is a risk that any later findings made by the County Board would merely rationalize its previous decision. *Id.; accord Curtis Oil v. City of North Branch*, 364 N.W.2d 880, 883 (Minn.App.1985). This court has also declined to remand where the municipality's decision was arbitrary because not supported by legally sufficient reasons. *Scott County Lumber*, 417 N.W.2d at 728. The evidence here would not permit the board to rationalize its earlier decision with new findings, as in the *Barnum* and *Scott County Lumber* cases. However, we need not remand where the parties have stipulated to this record with no suggestion that additional evidence is available to support the county's decision.

## DECISION

We reverse and order respondent to issue a solid waste disposal license to appellant. The county may condition the license on appellant's acceptance of the commitments it made in seeking the permit.[5] In addition, we make no observations regarding the procedures needed so that appellant complies with the county zoning law, a

---

4. Commissioner Landkamer also expressed concerns about the proximity of the landfill to Mankato's water supply. We note that in its report to the board, Malcolm Pirnie suggested that Northern States test the effects of leachate on the municipal water. When Malcolm Pirnie later sent Northern States a list of conditions to the license, which appellant committed to follow, testing of municipal water was not included. However, Northern States did agree to provide an "environmental monitoring plan" to the

county prior to construction. It is not clear whether this plan would include testing of municipal water.

5. We do not limit the authority of the county to include as a condition of the license a reasonable requirement on the testing of the municipality's water supply to determine the effect if leachate were discharged into it. *See supra* note 4.

subject explored in Minnesota Citizens' briefing before this court.

Reversed.