*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1550**

Continental Property Group, LLC,
Appellant,

vs.

City of Wayzata,
Respondent.

**Filed April 18, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-15-797

Michael J. Mergens, Marshall S. Lichty, EntrePartner Law Firm, PLLC, Minneapolis, Minnesota (for appellant)

Paul D. Reuvers, Nathan C. Midolo, Jason J. Kuboushek, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

In this appeal from the city's denial of (1) a planned unit development concept plan, and (2) a height variance, appellant developer argues that the city's decision was arbitrary, capricious, and unsupported by substantial evidence. We affirm.

## FACTS

Continental Property Group, LLC (CPG) appeals the City of Wayzata's decision to deny CPG's concept plan for a planned unit development (PUD) and height variance request. CPG seeks to develop a five-story mixed-use building with retail space, office space, and 148 luxury apartments on two neighboring parcels of land (the site) located just north of Lake Minnetonka on Lake Street in Wayzata, Minnesota. One parcel currently houses a one-story commercial building and associated outbuildings. The adjacent parcel is a parking lot subject to a parking easement which provides 85 parking spots to a neighboring property. The combined area of the parcels is 2.46 acres. The site contains approximately one-half acre of wetlands, has poor soil, and water table issues. These factors contribute to difficulties for developing the site. CPG explored many options for the site but decided a five-story multi-use building is the only economically viable option.

The applicable zoning ordinance provides that a building may not exceed two stories or 20 feet, whichever is lower; however, the city council has the authority to approve a PUD of up to three stories or 35 feet, whichever is lower. Thus, in order to develop a five-story building on the site, CPG needs city council approval for both a PUD and a building height variance.

CPG submitted a concept plan in September 2014.[1] Pursuant to its PUD application procedure, city staff prepared a planning report with an overview of the project, the

---

[1] The concept plan is the initial stage of the PUD application. If a concept plan is approved, the developer works with the city but ultimately needs approval of a general plan before construction begins.

procedural aspects of the application, and the pertinent zoning provisions. The planning commission held a public hearing in December 2014 to discuss the proposed PUD and ultimately voted 7-0 to recommend denying the application. Several weeks later, the city council held a meeting to discuss the proposed PUD and ultimately voted 5-0 to deny the application. The city made written findings to support its decision to deny the concept plan application and additionally made written findings in support of its decision to deny the variance request. CPG sought a declaratory judgment from the district court, which granted summary judgment in favor of the city. CPG appeals.

## D E C I S I O N

### I.

This is an appeal of a municipal zoning decision and as such, "[w]e do not give any special deference to the conclusions of the lower courts, but rather engage in an independent examination of the record and arrive at our own conclusions as to the propriety of the city's decision." *Mendota Golf, LLP v. City of Mendota Heights*, 708 N.W.2d 162, 179-80 (Minn. 2006).

CPG argues that the city's denial of its concept plan should be reversed because the city's decision was arbitrary and capricious. A city's denial of a zoning request "is not arbitrary when at least one of the reasons given for the denial satisfies the rational basis test." *St. Croix Dev. Inc. v. City of Apple Valley*, 446 N.W.2d 392, 398 (Minn. App. 1989); *see White Bear Docking & Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn. 1982) ("The setting aside of routine municipal decisions should be reserved for those rare instances in which the City's decision has no rational basis. Except in such

3

cases, it is the duty of the judiciary to exercise restraint and accord appropriate deference to civil authorities in the performance of their duties."). "We uphold a city's land use decision unless the party challenging that decision establishes that the decision is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare." *Mendota Golf, LLP*, 708 N.W.2d at 180 (citation and quotation marks omitted). The courts do not interfere with a city council's decision so long as there is a rational basis for it, even if the decision is debatable. *Id.* Our review focuses "on the legal sufficiency of and factual basis for the reasons given." *Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn. 1988).

The Wayzata Zoning Ordinance (WZO) PUD "general standards" provides:

> In its review of any application under this Section, the City Council shall consider comments on the application of those persons appearing before the Council, the report and recommendations of the Planning Commission, the recommendations of the Design Review Board and any staff report on the application. The Council also shall evaluate the effects of the proposed project upon the health, safety and welfare of residents of the community and the surrounding area and shall evaluate the project's conformance with the overall intent and purpose of this Section. If the Council determines that the proposed project will not be detrimental to the health, safety and welfare of residents of the community and the surrounding area and that the project does conform with the overall intent and purpose of this Section, it *may* approve a PUD permit, although *it shall not be required* to do so.

WZO § 801.33.2 (2013) (emphasis added).

A review of the record reveals the following. The city staff prepared a planning report with an overview of the project, the procedural aspects of the application, and the pertinent zoning provisions. The city planning commission held a public hearing where

4

six citizens voiced their opposition to the project. The city planning commission voted 7-0 to deny the application, and the city council held a meeting to discuss the application. After doing so, the city denied the request and made written findings in support of its decision. It found that "[t]he Proposed PUD does not satisfy all of the general standards listed in Section 801.33.2.A of the Zoning Ordinance and in Section 2.1 of th[e] Resolution."

The city enumerated four reasons for its denial of the concept plan. First, the city considered the effect the PUD would have on the health, safety, and welfare of the area and its residents. It found:

> The Proposed PUD would have a negative effect on the health, safety and welfare of residents of the community and the surrounding area in that the proposed building of 61 feet 8 inches, 5 stories, containing 148 luxury rental housing units and 6,281 SF of retail, and 322 parking spaces would negatively impact the views, noise levels, traffic flows, and parking in the surrounding area. In addition, the height, scale, design and aesthetics of the Proposed PUD do not reflect the "small town" character and aesthetics of Wayzata but rather reflect a large city, urban, modern aesthetic and character. The Proposed PUD does not conform with the overall intent and purpose of Section 33 of the PUD Ordinance.

Second, the city considered whether the PUD was consistent with the city's comprehensive plan. It found:

> The Proposed PUD, which includes a five story building, is inconsistent with 1st Tier Central Business District and Downtown Mixed Use District Policy 2.18 which states that third story uses may be allowed, but the third story must be setback significantly more from the front façade of the floor below.

Third, the city considered the proposed density of the PUD. It found:

In the underlying C-4A District of the Property, the allowed density is fifty three (53) units per the Property's lot area. The Proposed PUD's one hundred forty eight (148) units would far exceed the current density for the location and be out of scale with the amount of lot area for the Property. Although the City Council has the authority to allow increased density beyond what is permitted in the underlying zoning district, the City Council is not required to approve additional density and the City Council finds that the significant amount of density requested is inappropriate.

And finally, the city considered the proposed height of the PUD. It found:

The building heights within the Proposed PUD do not meet the applicable height standards in that a five (5) story, sixty one foot eight inch (61'8") building is proposed, and the City Council finds that a variance from the applicable height standards should not be granted.

So long as any one of the reasons given by the city is supported by a rational basis the decision of the city will be affirmed. *See Trisko v. City of Waite Park*, 566 N.W.2d 349, 352 (Minn. App. 1997) ("Not all reasons for the denial of a conditional use permit need be legally sufficient and supported by facts in the record. Thus, a city's denial of a land use request is not arbitrary when at least one of the reasons given for the denial satisfies the rational basis test.") (citations and quotations omitted).

In this case, more than one reason is supported by a rational basis. The height of the proposed PUD far exceeds what is allowed under the zoning ordinance and the PUD requirements, and while the city has authority to negotiate density, the proposed density far exceeds the recommended allowance. Based on the proposed density 319 parking spots are required, and although the project allowed for 322 parking spots, 85 parking spots are subject to an easement from the neighboring property. The determination that the five-

6

story building on a 2.46 acre property is inconsistent with the comprehensive plan is supported by the record because the comprehensive plan provides that "[t]he mass and scale of recent commercial and residential development projects are a concern." CPG argues that the city's decision was arbitrary and capricious because a five-story building, Wayzata Bay, was built at the other end of Lake Street; however, Wayzata Bay is situated on more than 13 acres of land and due to its larger acreage is subject to different zoning requirements. We conclude the city had ample reasons that were legally sufficient and supported by facts in the record to deny the proposed PUD. *Swanson*, 421 N.W.2d at 313. We affirm the city's decision because it was supported by a rational basis.

## II.

CPG also challenges the city's denial of the request for a height variance. The variance request was dependent on the approval of the concept plan. The city properly denied the concept plan and, as such, did not need to reach the variance request. However, because the city made written findings on its denial of the variance request, we reach this issue in the interest of thoroughness.

Local zoning authorities have broad discretion when evaluating an application for a variance. *Kismet Investors, Inc. v. Cty. of Benton*, 617 N.W.2d 85, 90 (Minn. App. 2000). We review denials of variance applications to determine whether the decision was arbitrary and capricious and whether the reasons assigned for the decision are valid, bear on the general welfare of the immediate area, are legally sufficient, and have a factual basis. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn. 1983).

Requests for height variances in municipalities are governed by Minn. Stat. § 462.357.[2] "Variances shall only be permitted when they are in harmony with the general purposes and intent of the ordinance and when the variances are consistent with the comprehensive plan." Minn. Stat. § 462.357, subd. 6(2) (2014). To receive a grant of a variance, an applicant must establish "practical difficulties" in complying with the zoning ordinance. *Id.* Practical difficulties means (1) "the property owner proposes to use the property in a reasonable manner not permitted by the zoning ordinance"; (2) "the plight of the landowner is due to circumstances unique to the property not created by the landowner"; and (3) "the variance, if granted, will not alter the essential character of the locality." *Id.* "Economic considerations alone do not constitute practical difficulties." *Id.*

The city analyzed CPG's request for a variance under the correct "practical difficulties" standard provided in Minn. Stat. § 462.357, subd. 6(2). When resolving variance requests the zoning authority must "articulate the reasons for its ultimate decision, with specific reference to relevant provisions of its zoning ordinance." *Earthburners, Inc. v. Cty. of Carlton*, 513 N.W.2d 460, 463 (Minn. 1994). The city specifically mentioned WZO section 801.33.2 which outlines the intent and purpose of PUDs and the central business district and downtown mixed-use height requirement. The city determined that

---

[2] CPG argues that the city did not use the proper legal framework in analyzing its request because it did not address the factors in *In re Stadsvold*, 754 N.W.2d 323 (Minn. 2008). This argument fails for two reasons. First, the Stadsvolds sought a variance from a county board under a different statute with a different standard. *Id.* Second, the legislature amended both the municipality and county variance statutes in 2011. *See* Minn. Stat. §§ 394.27, 462.357.

CPG failed to establish each of the three practical difficulties factors and determined the request was largely based on economic considerations. CPG argues the decision was arbitrary and capricious because the site had "significant physical (and economic) limitations[,]" and the height variance request is "narrowly tailored to minimize those physical limitations and still conform to the City's comprehensive plan."

The city considered whether CPG "proposes to use the property in a reasonable manner not permitted by the zoning ordinance." Minn. Stat. § 462.357, subd. 6(2). It found:

> [CPG's did not establish that] its proposal for the property is reasonable. The stories and height of the building proposed far exceed the applicable limits for a PUD of this kind. The proposed 5 stories exceed the 3 story limit by 2 stories, and the proposed height of 61 feet 8 inches exceeds the height limit by 26 feet. The PUD ordinance only allows deviation from the height and story limits if a PUD property exceeds 13 acres; the Property for the Proposed PUD is 2.43 acres.

CPG argues the city misapplied the law because the city only "focused on whether [the proposed use] was . . . reasonable in light of the City Code." However, when the city determined CPG did not establish the proposed use was reasonable it did not rely exclusively on the ordinance. The city determined the proposed use was not reasonable because the height *far* exceeded what was allowed under the ordinance. [3] Although the

_____

[3] At the city council meeting the mayor stated:

> [Y]ou have not only exceeded many of the provisions of the ordinance, you have massively exceeded them and I think if you wanted to have a . . . citizen revolt, all you've got to do is put up a five-story building on Lake Street, and that's what would result because people care about the rhythm and character of this city, and it's not five stories on Lake Street.

9

city did not make explicit findings under this particular heading, the city provided ample reasons supporting the determination the proposed use was not reasonable in the section denying the concept plan. Further, CPG bears the "heavy burden" of demonstrating the proposed use was reasonable. *See Luger v. City of Burnsville*, 295 N.W.2d 609, 612 (Minn. 1980) ("A variance allows property to be used in a manner forbidden by the ordinance . . . [t]hus, a heavy burden is imposed on an applicant for a variance to show that its grant is appropriate."). Thus, the city did not misapply the law when it determined CPG failed to demonstrate the proposed use was reasonable and, therefore, the denial on this basis was not arbitrary and capricious.

The city also considered whether CPG's "plight . . . is due to circumstances unique to the property not created by [CPG]." Minn. Stat. § 462.357, subd. 6(2). It found:

> The Property shares the same characteristics and challenges of similar properties in the immediate area, with smaller parcels, challenging soils, wetlands, low water table, Shoreland environmental concerns, traffic, parking and commercial mixed use guidance. The Applicant's need for a variance for a much taller building than is permitted under the Zoning Ordinance appears to be driven by the need to see enough of an economic return on the Proposed PUD to justify the price Applicant has or will pay for the Property and other economic factors.

CPG argues the site's "self-limiting physical characteristics are unique to the property." However, CPG does not explain how its property is unique from neighboring properties

---

The mayor also noted the variance request was nearly double the height allowed by the ordinance and explained the city council "wrestle[s] with a foot or two variance [requests] sometimes."

subject to the same zoning ordinances. The city's determination that CPG did not establish its plight was due to circumstances unique to its property is supported by the record, and, therefore, the denial on this basis is not arbitrary and capricious.

And the city considered whether CPG's "variance, if granted, [would] alter the essential character of the locality." Minn. Stat. § 462.357, subd. 6(2). It found:

> [T]he Variance would significantly alter the locality—i.e., the part of Lake Street and the Central Business District in which it is proposed—by allowing a building that is much taller, denser and the locus of a significantly greater intensity of uses.

CPG asserts the city has "a neighborhood of large five-story buildings" and the city "cannot now say that a smaller five-story building is out of character." However, to support this assertion CPG relies on Wayzata Bay, the single five-story building complex, which is located on the east end of Wayzata's downtown. We are not persuaded that a single five-story building complex across town has created a "neighborhood of large, five-story buildings," especially when Wayzata Bay is located on 13 acres and the site of the proposed PUD is 2.46 acres. In addition to reasons already discussed (comprehensive plan inconsistency, and far exceeding density and height requirements), the city's determination that the proposed PUD would significantly alter the locality is supported on this record by citizens who expressed concern about the proposed development.[4] The city determined

---

[4] For example, one resident explained:

> But now when I see it, the rendering of it, it just strikes me that, you know, [i]t's an attractive, modern building that would look great . . . just outside of Washington D.C. maybe, or LA maybe, Minneapolis . . . you know, where you're going six and seven

11

that CPG did not establish the height variance would not alter the essential character of the locality. The city's findings are supported by the record and, therefore, the denial on this basis is not arbitrary and capricious.

Finally, the city considered whether the need for the variance is based on economic considerations. Minn. Stat. § 462.357, subd. 6(2). It found:

> [CPG's] request for the Variance appears to be driven primarily, if not solely, by economic considerations, which alone do not constitute "practical difficulties" under the standards for variances in the City's Zoning Ordinance. [CPG's] submittals and presentation at the Public Hearing emphasized that the proposed height of the building for which the Variance was requested was necessitated by the financial data for the proposed PUD project and the need to see an acceptable economic return on the Property for the Applicant, given the costs of the Proposed PUD and the purchase prices paid for the Property.

CPG asserts "the City seems convinced it can deny a variance if economic considerations play any role." However, the city planner noted "[t]here are specific criteria [that must be considered] when reviewing [height variance] requests, but the financial information is not one of those criteria, though it is useful and relevant background information." The city

---

> stories. I just believe that . . . this is too big. It's out of context, although attractive.

Another resident expressed concern regarding the size of the project.

> [J]ust the scale of this proposed project versus the remaining buildings that'll be in front of it, I just think it is very much out of character with the city . . . another concern of mine would be the view from the north side or from the west side . . . not only from Lake Street

did not misapply the law because it recognized that economic considerations could not be the sole basis for establishing practical difficulties, but that economic considerations are "useful and relevant background information."

The city addressed the applicable statutory criteria and determined CPG did not establish practical difficulties. The city did not misapply the law, and its decision to deny the height variance request was supported by a factual basis. Thus, its denial of the height variance request was not arbitrary and capricious.

**Affirmed.**