FARMINGTON TOWNSHIP, Appellant,

v.

HIGH PLAINS COOPERATIVE, Dale Michel, Respondents.

No. C4–90–682.

Court of Appeals of Minnesota.

Aug. 21, 1990.

Kenneth R. Moen, Dunlap, Finseth, Berndt & Sandberg, P.A., Rochester, for Farmington Tp.

Robert G. Rochford, Rochester, for High Plains Co-op.

Phillip P. Hansen, Hansen Law Office, Ltd., Winona, for Dale Michel.

Considered and decided by
GARDEBRING, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court granted summary judgment for respondent Dale Michel after appellant Farmington Township brought suit for an injunction. Appellant had claimed that respondent's leasing of a liquid petroleum tank violated the local zoning ordinance because it was neither general farming nor an accessory use to general farming. We reverse.

## FACTS

Appellant, a township in Olmsted County, promulgated a zoning ordinance under Minn.Stat. §§ 366.10–19 (1988). The ordinance establishes a district where the permitted uses include general farming and "similar agricultural related uses" as well as accessory uses "customarily incidental to" general farming. Township of Farmington, Olmsted County, Mn., Zoning Ordinance § 8.01 (1989). The ordinance defines "accessory use" as a "use naturally and normally incidental, to subordinate to, and auxiliary to the principal permitted use of the premises." *Id.* at Appendix A.

The ordinance establishes that the area is best suited for agricultural use and may be threatened by expanding growth and urban development, and that the development and urbanization of agricultural land is detrimental to the health and safety of the citizens. *Id.* at § 1.00. The purpose of the ordinance is to classify land as protected agricultural land and to preserve such land from unnecessary encroachment by non-agricultural uses. *Id.* at § 1.02.

Respondent Dale Michel built a 30,000 gallon tank for storage of liquid petroleum (LP) fuel. Respondent later leased the tank to the High Plains Cooperative. The cooperative is owned by local farmers and is in the business of supplying various retail products to its members and non-members. The cooperative fenced in the tank and built a loading dock around it.

Respondent requested the township's approval of the lease, but the township board denied respondent's request, based on the zoning ordinance. When respondent and the Cooperative proceeded with the lease and use of the tank, the township brought suit to enjoin the use. The trial court granted summary judgment for respondent, finding that the lease arrangement was "agricultural in nature and a permitted incidental use of agricultural land." The township now challenges that judgment.

## ISSUE

Is the proposed use of an LP gas tank related to agriculture or incidental to farming?

## ANALYSIS

■ A municipality generally has broad discretion to promulgate zoning ordinances and the judiciary should not interfere with the ordinance where its reasonableness is debatable. *State ex rel. Howard v. Village of Roseville,* 244 Minn. 343, 347, 70 N.W.2d 404, 407 (1955).

■ This case comes to us on a summary judgment. The parties agreed that there are no material issues of fact. Our review is essentially a de novo determination of whether the trial court correctly interpreted the ordinance. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980).

■ We must interpret a zoning ordinance according to the plain and ordinary meaning of its terms and in light of its underlying policy. *Id.* at 608–09. We also recognize that because zoning ordinances are a restriction on common law rights, they should be strictly construed against a governmental unit and in favor of the property owner. *Id.* But see *Chanhassen Estates Residents Ass'n. v. City of Chanhassen,* 342 N.W.2d 335, 341 (Minn.1984) (Simonett, J. concurring) (underpinning for this rule of strict construction no longer exists).

■ Minnesota caselaw has not defined the meaning of "agricultural" and "incidental" within the context of zoning regulations. The Iowa Supreme Court considered this issue in *Farmegg Products, Inc. v. Humboldt County,* 190 N.W.2d 454 (Iowa 1971). *Farmegg Products* determined the applicability of local zoning ordinances to a proposed project. The project consisted of two long buildings used solely for raising young chickens. The chicks would not be allowed free in the buildings or in the area surrounding the structures. Twenty-two weeks after birth, the birds were transferred to egg-laying houses in a separate county. The premises were not used in conjunction with any other farming operation.

The farming case required a decision of whether this contemplated use would make the property "agricultural property" exempt from local zoning ordinances which provided exemptions for use of land for agricultural purposes or the use of structures incidental to such purposes. Settling on a useful test, the court held that the proposed operation was organized and carried on as an independent productive activity and not as part of an agricultural function. *Id.* at 458 (quoting *Farmers Reser-*

*voir & Irrigation Co. v. McComb,* 337 U.S. 755, 760–61, 69 S.Ct. 1274, 1277–78, 93 L.Ed. 1672 (1949)). Though the activity involved an agricultural topic and an agricultural enterprise, the court also recognized that the property would not be equipped with the implements of farms and that no part of the operation would be used for produce or crop production. *Id.* at 459.

Finding the *Farmegg Products* rationale helpful, we hold that the leasing activity here is not an agricultural use nor customarily incidental to general farming within the meaning of section 8.01 of the ordinance. This holding is supported by several undisputed facts. First, the High Plains Cooperative is clearly not a general farmer. Its operations can in no way be characterized as farming and do not involve an agricultural topic nor an agricultural enterprise. Second, a 30,000 gallon tank is not a normal component of a farm operation. The record indicates a 500 to 1000 gallon tank is typical. The only other 30,000 gallon tank in the area is in a commercial zone. One 8000 gallon tank in the area is used by a farmer. Although respondent has five other tanks on his property with capacities of 18,000, 15,000, 9000, 1000, and 250 gallons, all erected for personal use, this number is not typical of a farming operation. Third, the activity here, like the activity in *Farmegg,* involves the enterprise of furnishing supplies for agricultural businesses. It is in the nature of an agricultural supply business rather than agriculture itself. The business here serves many users other than the owner, and in this instance the business serves farmers and non-farmers alike. Finally, although LP gas may be a presence in the farming community, the danger level in a 30,000 gallon tank exceeds that of typical LP tanks on farms in the area. The ordinance clearly contemplates that public safety is an important factor in zoning decisions.

Despite any suggestion that the lease arrangement confers some benefit of the area farmers by making LP gas more readily available, the test we adopt operates independently of that analysis. Rather than quantifying benefits, we have ex-

amined whether the activity was carried on as part of the agricultural function or was separately organized as an independent productive activity. Thus, our decision squares with the statutory purpose to protect agricultural land and prevent unnecessary encroachment by industry.

Our decision is also consistent with a more recent decision of the Iowa Supreme Court. In *Helmke v. Board of Adjustments, City of Ruthven,* 418 N.W.2d 346, 352 (Iowa 1988) the court approved the exemption of a grain storage facility from local zoning requirements which provided exemptions similar to those here. The facility in *Helmke,* designed to hold 250,000 bushels of grain, was built by a cooperative as a supplement to its farm members' on-farm storage facilities. Viewed in this manner, the facility "could reasonably be characterized as part of a farming continuum which begins with the planting of the crop and continues through its cultivation and harvesting." *Id.* Thus the facility was not "an independent productive activity." *Id.* The leasing activity here cannot properly be characterized as part of an agricultural continuum but clearly has an independent productive capacity.

## DECISION

Based on the foregoing, the judgment of the trial court must be reversed. Because there is no dispute as to the facts we remand with directions to enter judgment for the Township.

Reversed and remanded.