SLS PARTNERSHIP, Apple Valley,
Petitioner, Respondent,

v.

The CITY OF APPLE VALLEY,
Appellant.

No. C2–92–1379.

Court of Appeals of Minnesota.

March 2, 1993.

Review Granted April 29, 1993.

Phillip R. Krass, Timothy F. Moynihan, Krass & Monroe Chartered, Bloomington, for respondent.

James F. Sheldon, Annette M. Margarit, Severson, Wilcox & Sheldon, P.A., Apple Valley City Attys., Apple Valley, for appellant.

Carla Heyl, St. Paul, for amicus curiae League of Minnesota Cities.

Considered and decided by DAVIES, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

DAVIES, Judge.

The City of Apple Valley (the city) appeals a writ of mandamus prohibiting it from enforcing its zoning ordinances against a mobile home park. The trial court concluded that operation of the park was permitted under an ordinance allowing pre-existing nonconforming uses, holding the ordinance grandfathered mobile homes so long as they are located on original pads. We reverse.

## FACTS

In 1958, the board of the Township of Lebanon adopted Ordinance No. 3, regulating mobile homes. In 1959, the board approved a plan for a mobile home park consisting of 95 lots on a 40–acre parcel. This park, "Eden Mobile Home Park," is currently owned by respondent SLS and is the subject of this case.

In 1967, the township adopted Ordinance 43, which amended the lot size and setback requirements of Ordinance No. 3. On a number of occasions, the township inspector found Eden Mobile Home Park in noncompliance with municipal ordinances, but the ordinances were not enforced because the violations were considered grandfathered as nonconforming uses.

During 1990, the city (successor to Lebanon Township), began closer scrutiny of the mobile home park, which was then largely occupied by mobile homes larger than those permitted by the setback rules of Ordinance No. 3.[1] In April 1991, the city passed Ordinance No. 515 amending Ordinance 43 to require even greater lot widths, setbacks, and encroachment limitations for mobile home parks.

In 1992, the city informed SLS that its park was no longer within the terms of the pre-existing use and that the city would not renew the park permit unless SLS adhered to the 1991 ordinance. SLS contended this was economically impossible and sought a writ of mandamus from the district court to effectively enjoin the city from enforcing its ordinances. After trial, the district court entered an order for a mandamus permanently grandfathering the park under Ordinance No. 3. This appeal by the city is from the district court's denial of post-verdict motions for a new trial or amended findings.

## ISSUES

I. Did the trial court abuse its discretion in holding that each mobile home brought into the park subsequent to adoption of the 1991 setback requirements is not a new structure and is not stripped of its pre-existing use exception under the nonconforming structures doctrine?

II. Was the writ of mandamus overly broad by denying the city its police powers to enforce compliance with health and safety regulations?

1. Also, the city had a cost estimate prepared toward the end of acquiring the park. The

## ANALYSIS

### I.

The City of Apple Valley appeals from the district court's refusal to grant a new trial. A trial court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn.1981). On appeal from an order denying a new trial after a verdict, facts are viewed in a light most favorable to the verdict. *Kugling v. Williamson*, 231 Minn. 135, 142, 42 N.W.2d 534, 539 (1950).

The city claims that its zoning ordinances could properly be applied to new mobile homes because the removal of the old homes, and substitution of larger new homes, negated any nonconforming *structure* status. The city claims the trial court incorrectly analyzed the issue only as a nonconforming *use.*

The trial court dealt with the nonconforming structure issue by stating:

> The City has argued that placement of a mobile home is an alteration of a structure; therefore, taking it out of the nonconforming status. The City's argument is unpersuasive. The City incorrectly focuses on the mobile home as a nonconforming structure when it should be focusing on *each particular* pad on which the mobile home rests in determining nonconforming status.

(Emphasis added.)

■ This case requires interpretation of Apple Valley's zoning code as it relates to nonconforming uses, nonconforming structures, and the definition of structures. Interpretation of an existing zoning ordinance is a question of law and this court need not defer to the trial court's conclusions on these matters. *County of Lake v. Courtney*, 451 N.W.2d 338, 340 (Minn.App. 1990), *pet. for rev. denied* (Minn. Apr. 13, 1990).

■ The Apple Valley nonconforming uses and structures ordinance provides:

estimated cost, approximately $4,000,000, precluded acquisition.

Any *structure* or *use* lawfully existing upon the effective date of this ordinance or an amendment thereto, may be continued *at the size* and in a manner of operation existing upon such date except as hereinafter provided.

Apple Valley, Minn., Code of Ordinances § A1–6(a) (1983) (emphasis added). "Structure" is defined by the Apple Valley code as

[t]hat which is built or constructed, an edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner.

Apple Valley, Minn., Code of Ordinances § A1–3 (1991). Under the plain language of this definition, a mobile home fits the definition of "structure" as "an edifice or building of any kind." Regardless of whether the pad may also be a structure, we conclude section A1–6(a) applies to the mobile homes themselves, as structures.

■ Next, we consider whether, as alleged by the city, a change of mobile homes triggers the loss of nonconforming status. The Apple Valley code provides:

Except as in this ordinance specifically provided, no structure shall be erected, converted, *enlarged,* reconstructed or altered and no structure or land shall be used for any purpose nor in any manner which is not in conformity with this ordinance.

Apple Valley, Minn., Code of Ordinances § A1–4 (1983) (emphasis added).

In *Courtney* a similar ordinance was challenged when a nonconforming structure was enlarged, though it retained the same use. The court held that equating a use exception with a structure exception

tortures its plain and ordinary meaning. It is evident from the language of [the ordinance] that enlarging, increasing, extending, or moving a nonconformity is impermissible. We recognize that if the use is changed to a permissible one, pursuant to the exclusion, the nonconformity may be continued. That situation, however, does not exist here. Hence, in enlarging his cabin Courtney violated [the ordinance].

*Courtney,* 451 N.W.2d at 341. Following this rationale, we conclude the district court's application of the use, rather than the structure, standard was an erroneous conclusion of law.

This position conforms with the purpose of nonconforming use ordinances, which is to achieve the eventual eradication of nonconforming uses or structures while avoiding waste and unfairness. Allowing structures to be altered so as to exacerbate the offense to the general community undermines the purposes of zoning laws generally and the pre-existing nonconforming use law specifically. As mobile homes continue to grow in size, the need for conformity with new ordinances becomes increasingly important. Each time a new and larger mobile home is moved onto a pre-existing pad, the spacing intent of the *original* ordinance, as well as its successors, is subverted as the park becomes more crowded. In light of these considerations, we determine the writ of mandamus here was an abuse of the district court's discretion.

## II.

■ The city contends the writ of mandamus is overly broad because it deprives the city of the power to regulate the mobile home park, not only under the 1991 ordinance, but also under Ordinance No. 3. This issue is, in large measure, resolved by this court's decision to reverse the writ of mandamus. Insofar as any confusion remains, however, we wish to clarify the effect of Ordinance 515 on the city's authority to enforce its Code. Each mobile home unit, if enlarged after April 23, 1991, is subject to Ordinance 515, and the city is invested with full police powers to enforce all relevant zoning regulations. All other mobile homes, pre-existing or replaced without enlargement, remain subject only to the requirements of Ordinance 3.

## DECISION

The writ of mandamus was an abuse of the district court's discretion. The City of Apple Valley may enforce Ordinance 515 as

to all mobile homes altered after April 23, 1991.

Reversed.

FORSBERG, J., dissents.

FORSBERG, Judge (dissenting):

I respectfully dissent.

The interpretation of this, as any other zoning ordinance, is subject to a three-pronged analysis developed by Minnesota courts.

> Three rules of construction guide our interpretation [on such matters]: 1) zoning ordinances must be construed according to their plain and ordinary meaning; 2) zoning ordinances must be construed strictly against the county and in favor of the property owner; and 3) ordinances must be considered in light of their underlying policy objectives.

*County of Lake v. Courtney*, 451 N.W.2d 338, 340 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990). Applying this analysis to the facts of the present case, in my opinion, calls for affirming the district court regardless of whether the "use" or "structure" nonconforming status is considered.

In the first place, "structure" in this case is not susceptible to a "plain and ordinary meaning." The term "structure" is ambiguous in the context of a mobile home park, since both the pad and the mobile home may be considered a "structure." The majority's reliance on *Courtney* is therefore misplaced because, in that case, there was no question the structure that was the subject of the suit was intended to be covered by the pertinent ordinance.

Recognizing the ambiguity, we should be guided by the second prong of the zoning analysis and construe the ordinance strictly against the city and in favor of the owner. In so doing, I conclude the ordinance was meant to regulate the pads, the more permanent structures, as opposed to the mobile homes themselves. Indeed, the evidence indicates this was precisely the interpretation the city applied in its inspections every year up to 1991. Likewise, such an interpretation is in concert with logic and common sense. It is the pads that define the lots, while the mobile homes seem more in the nature of appurtenances. Unfortunately, the majority completely disregards this prong of the analysis.

Finally, and most importantly, I believe reversal of the district court is contrary to a consideration of the ordinance in the light of its underlying policy objective. While I agree with the majority that uniformity is a policy objective for this ordinance, I fear that is not the essential objective pursued in this case. Rather, as facts not set out in the majority suggest, a purpose not included in the legitimate policy purposes of the nonconforming structure ordinance appears to have motivated the council.

On January 10, 1991, the Dakota County Housing and Redevelopment Authority estimated the city's cost of acquiring the mobile home park at approximately $4,000,-000. This was rejected by the council as prohibitively expensive. On April 23, 1991, the City of Apple Valley passed Ordinance 515 amending Ordinance 43 and establishing lot widths, setbacks and encroachments for mobile home parks. This ordinance effectively forecloses the economic viability of the enterprise, and will result in closing the park. The sequence of events leading up to passage of Ordinance 515 are, giving the benefit of the doubt to the council, curious, and at worst, transparent. One of the underlying policy purposes of the ordinance in question is most decidedly *not* to allow the municipality to surreptitiously acquire by political power that which it is unwilling to acquire at fair market value.

I would affirm the district court while emphasizing that the city retains its police powers properly exercised under Ordinance 3.