**SLS PARTNERSHIP, Apple Valley, Petitioner, Appellant,**

v.

**The CITY OF APPLE VALLEY, Respondent.**

**No. C2–92–1379.**

Supreme Court of Minnesota.

Feb. 4, 1994.

Phillip R. Krass, Timothy Moynihan, Krass & Monroe, Bloomington, for appellant.

James F. Sheldon, Michael G. Dougherty, Annette M. Margarit, Severson, Wilcox & Sheldon, P.A., Apple Valley, for respondent.

Carla Heyl, Shoreview, for amicus curiae, The League of MN Cities. John F. Bonner, III, Parsinan, Bowman & Levy, P.A., Minneapolis, for amicus curiae, MN Manufactured Housing Assoc.

COYNE, Justice.

On the petition of SLS Partnership, Apple Valley, we review a majority decision of the court of appeals reversing an order of the Dakota County District Court for the issuance of a writ of mandamus commanding the City of Apple Valley to permit the continuance of the Partnership's existing nonconforming use of its property as a mobile home park and holding on appeal that the City of Apple Valley may enforce its recently adopted Ordinance No. 515 "as to all mobile homes altered after April 23, 1991." *SLS Partnership, Apple Valley v. The City of Apple Valley*, 496 N.W.2d 429, 432 (Minn. App.1993). We affirm in part and reverse in part.

In 1958 Lebanon Township adopted Ordinance No. 3, Apple Valley, Minn., Ordinance 3 (Aug. 12, 1958), to regulate the operation of house trailer parks within the town and in 1959 issued a permit to Stratford, Inc., to build 95 trailer lots and to operate Eaton Mobile Home Park on land which the township had rezoned from agricultural to commercial use. It appears that Eaton was actually constructed on a 108 lot design, but nothing in the record indicates township disapproval of the additional lots.

The trial court found that the original construction of the park complied with all the requirements of Ordinance No. 3. The ordinance required the installation of utilities—electricity, water and sewer—to serve each trailer home, which was defined in the ordinance as "any vehicle or portable structure having no foundation and resting upon wheels, and so designed as to permit occupancy for dwelling and sleeping purposes." Ordinance No. 3 contained specific area and setback requirements for each trailer lot:

(a) A minimum width of 40 feet and a minimum area of 1,800 square feet;

(b) At least a 20 foot clearance between trailers and end-to-end clearance of at least 10 feet;

(c) A 30 foot setback from the right-of-way line of any public road or public street, and a setback of at least 15 feet from the trailer park boundary.

To comply with the requirements of Ordinance No. 3, Stratford, Inc., built a concrete pad 20 feet long and 10 feet wide on each lot with water, sewer, and electric connections, and a trailer about 10 feet wide and 18 feet long was parked on the pad. By the mid–1960s, the width of many trailers had increased to 12 feet, and mobile homes 14 feet wide became popular as early as 1970. Over the past 20 years mobile homes have continued to increase in size, and today a mobile home can be 80 feet long, and double mobile homes can be up to 40 feet wide. While the homes have increased in size, the size of the lots and the concrete pads at Eaton Park have remained unchanged.

In 1967, the year before Lebanon Township was incorporated into the then Village of Apple Valley, the township adopted a new ordinance regulating the operation of mobile home parks—Ordinance No. 43. Apple Valley, Minn., Ordinance 43 (Sept. 14, 1967). In apparent recognition of the changing character of mobile homes, Ordinance No. 43 defines "trailer home" or "mobile home" as "a mobile trailer, coach, or automobile home, or any vehicle or structure so designed and constructed in such a manner as will permit occupancy thereof as living quarters for one or more persons and so designed that it is or may be mounted on wheels and used as a conveyance on highways or streets, propelled or drawn by its own or other motive power." Ordinance 43 required the park to be serviced by the township water and sewer systems and provided for underground installation of other utilities, such as electricity, natural gas, and telephone. The ordinance prescribed a minimum size of 400 square feet and a minimum width of 10 feet for a mobile home.

The most significant changes wrought by Ordinance 43 were increased lot size and new setback requirements:

(a) Minimum lot size—5,000 square feet and at least 50 feet wide. The lot must be at least 60 feet wide if a Twin 10 or 12 trailer is placed on the lot.

(b) Minimum setbacks—

(1) Front of trailer must be situated not less than 15 feet from the sidewalk;

(2) Rear of trailer must not be within 15 feet from rear lot line;

(3) Sides of trailer must be situated not less than 20 feet from any adjacent mobile home or attached structures;

(4) Corner lot—Trailer must be set back at least 15 feet from sidewalks in front and on side;

(5) No trailer may be situated within 50 feet of Eaton Mobile Home Park boundary line.

At some time after Lebanon Township was incorporated into Apple Valley, Ordinance No. 43 was codified as Chapter 13 of the Apple Valley Code of Ordinance. From 1968 through 1990 Apple Valley annually renewed Eaton's permit to operate Eaton Mobile Home Park as a park for 108 mobile home units. Lebanon and Apple Valley inspectors regularly complained that Eaton was not in compliance with Ordinance No. 43 but recommended renewal of Eaton's permit because the park was a grandfathered nonconforming use. The Apple Valley inspector did not measure for setback violations but noted that it would be difficult or impossible to correct the violations economically. In 1986 the Apple Valley inspector reported that compliance with the minimum lot area and setback provisions of Ordinance No. 43 would require removal of approximately 50% of the 108 mobile homes situated in Eaton Park. Nevertheless, Apple Valley continued to issue annual permits for the operation of Eaton Mobile Home Park until 1991.

On May 23, 1991 the City of Apple Valley did issue a license and authorization for a 1991 mobile home park permit to Eland Corp. d/b/a Eaton Mobile Home Park,[1] but the permit was expressly made subject to the conditions specified in Resolution No. 1991–123, which the city council had adopted on that same day, and subject to the regulations contained in Chapter 13 of the Apple Valley City Code. Resolution No. 1991–123 was directed solely to the operation of Eaton Mobile Home Park, and it required procurement of a permit from the City when a unit was moved onto a lot and before any addition or accessory structure was built on a lot. The resolution recited an agreement by the owners of Eaton Park that replacement units would be no larger than the units being replaced, and the resolution also required completion of financially feasible plans for the reduction of setback violations. Finally, the resolution incorporated by reference the regulations set out in Chapter 13 of the City Code.

On the day the permit was issued, May 23, 1991, Ordinance 515 was also adopted and incorporated into Chapter 13 of the City Code. Apple Valley, Minn., Code ch. 13 (1991). Ordinance 515 retained the lot size and setback requirements of Ordinance 43 with a slight easing of the front setback and provision for encroachment into setback areas of steps, air conditioners and eaves.

Some time before issuance of the 1991 permit, the City explored the feasibility of acquiring Eaton Park by condemnation. It appears, however, that when the Dakota County Housing and Redevelopment Authority projected a cost slightly in excess of $4,000,000, the City abandoned any thought of condemnation. Instead, City officials made it quite clear that the City intended to enforce compliance with Chapter 13 of the City Code as it existed after the adoption of Ordinance 515.

In January 1992 the City informed SLS Partnership, Apple Valley, that Eaton Park must conform with the current requirements of Chapter 13 of the City Code. The City refused to issue a permit for the continued operation of Eaton Mobile Home Park, and on February 27, 1992, directed SLS to submit a plan of compliance by June 9, 1992.

On SLS Partnership's petition, the Dakota County District Court issued a writ of mandamus commanding the City of Apple Valley to issue SLS a 1992 mobile home park permit "together with any and all authority necessary for [SLS] to move into said Eaton Mobile Home Park, such mobile home units as it may in its exclusive discretion choose to allow to rent facilities within said mobile home

---

1. Ownership of the park property changed hands from time to time after Stratford, Inc. built the trailer park in 1958. Eland Corp. is the immediate predecessor of the plaintiff, SLS Partnership, Apple Valley.

park in the ordinary course of its business * * * *" The City appealed and the court of appeals reversed, not only ruling that the trial court erred in issuing the writ of mandamus, but also declaring that the City may enforce Ordinance No. 515 as to any mobile home altered after April 23, 1991.[2]

■ The principles for the interpretation and application of an ordinance were definitively set out by this court in *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604 (Minn.1980). Although a legislative policy-making decision is reserved to the city, subject only to the requirement that it be neither arbitrary nor capricious, the interpretation of an existing ordinance and the manner in which the ordinance is to be applied to the facts are for the court. *Id.* at 608. The particular principles of construction to be considered in this context are three:

First, courts generally strive to construe a term according to its plain and ordinary meaning. * * *

Second, zoning ordinances should be construed strictly against the city and in favor of the property owner. * * *

[Third,] A zoning ordinance must always be considered in light of its underlying policy.

*Id.* at 608–09.

Although SLS does not even cite *Frank's Nursery Sales,* its argument rests implicitly on *Frank's* first two principles. SLS contends (and the district court agreed) that in 1958 and 1959 after Lebanon Township rezoned the land in question it authorized the predecessor of SLS to build and operate a mobile home park on that land. At the time Eaton Mobile Home Park was constructed it complied in all respects with Ordinance 3, the applicable ordinance. The infrastructure of the park, including the 108 concrete pads and the utility connections, has never been changed. Neither has the use of the property changed; it was constructed as a park for mobile homes and it has ever since been used for that purpose. Therefore, the SLS argument goes, although the sizes of the lots and setbacks do not comply with zoning ordi-

nances subsequently adopted, Eaton is entitled to the status of a grandfathered nonconforming use and as long as that use and the park infrastructure remain unchanged, the City may not require compliance with later adopted ordinances.

The City, on the other hand, asserts that because it has long recognized Eaton Mobile Home Park as a nonconforming use which existed prior to the adoption of Ordinance 43, it has never attempted to enforce the lot-size requirements of either Ordinance 43 or Ordinance 515. The City distinguishes, however, a "nonconforming use" from a "nonconforming structure." A "structure" is defined in Apple Valley, Minn., Code § A1–3 (1991), as

[t]hat which is built or constructed, an edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner.

A "nonconforming structure" is defined in these words:

[a]ny structure permitted by existing city ordinance upon the effective date of its construction which would not conform to the applicable regulations if the structure had been erected under the provisions of subsequent ordinance(s).

Apple Valley, Minn., Code § A1–3.

Mobile homes, the City argues, are "structures" and many of them are "nonconforming structures" because they violate the setback requirements of Ordinance 515. Whenever any mobile home is replaced by another mobile home, the replacement is not the same structure as the "structure in existence at the time" the new ordinance was adopted; therefore, the City contends, the replacement mobile home cannot be grandfathered in and must, instead, comply with the requirements of the ordinance in force at the time of the removal and replacement. Adopting the City's position, the court of appeals held that each mobile home replaced by a larger unit after April 23, 1991, must comply in all respects with Ordinance 515.

---

**2.** Ordinance No. 515 was not adopted until May 23, 1991.

SLS counters with this response. The definition of "mobile home" in Ordinance 515 does not include the word "structure:"

> *Mobile home:* A transportable, single-family dwelling unit suitable for year round occupancy and containing the same water supply, waste disposal and electrical conveniences as immobile housing and subject to tax or registration, as such, under the provisions of Minnesota Statutes Chapter 168 or Chapter 273 and having no foundation other than wheels, jacks or skirtings.

Apple Valley, Minn., Code § 13–34 (1991). Inasmuch as a mobile home is, by definition, not a structure, SLS argues, the City cannot resort to the definition of "structure" to make a mobile home a "nonconforming structure."

Curiously, both Ordinance 3 and Ordinance 43 incorporated the term "structure" in the definition of "trailer home" or "mobile home." Neither of these ordinances makes reference to "nonconforming structures" and although Ordinance 43 prescribes a minimum size and a minimum width for a mobile home, neither ordinance sets a maximum size or any maximum dimension. The City deleted the term "structure" from the definition of mobile home in Ordinance 515 and for the first time incorporated a definition of "structure" broad enough to include everything from the grandest building to the meanest shack and from the most complex computer to a baseball, but it did not set maximum sizes or dimensions for mobile homes. Neither party, however, can be permitted to rely on a definition contained in one ordinance while asserting that another ordinance since superseded or subsequently adopted is controlling in the circumstances.

■ Certainly, the contentions of each of the parties take into consideration some of the *Frank's Nursery* factors, but none meet all the *Frank's* criteria. SLS focuses on the land use and the concrete pads and utility equipment set into and permanently affixed to the ground while the City treats the mobile home park as if it were an ordinary subdivision improved by houses built on and firmly fixed to foundations. Neither party, it seems to us, considers the underlying purpose of Ordinance 3 and its successors: to regulate the use of land for the temporary placement of transportable living quarters. At the time Ordinance 3 was adopted and Eaton Mobile Home Park was designed and constructed, the mobility of what were then called "trailer homes" was surely a recognized characteristic of, mobile home parks and the removal of trailer homes and their replacement by other, perhaps newer, trailer homes was surely anticipated. In short, when the owner-occupants of a house move to another location, the people move away but the house stays—only the occupants are replaced; when the owner-occupant of a mobile home moves, the home, as well as its occupants moves away and is replaced by another mobile home. In the latter situation the traditional law applicable to nonconforming structures is a poor fit. It is indeed unfortunate that neither the township planners nor the developer of Eaton Mobile Home Park seems to have anticipated and made allowance for the significant increase in the size of mobile homes which has taken place since the mid–1960s, but the City may not now remedy that lack of vision by inserting into its zoning code definitions of "structure" and "nonconforming structure" patently designed to force immediate compliance with an ordinance adopted more than 30 years after the Park came into existence. We have previously observed that a municipality need not allow the expansion or enlargement of preexisting nonconforming uses and that the "public policy behind that doctrine is to increase the likelihood that such uses will in time be eliminated due to obsolescence, exhaustion, or destruction." *County of Freeborn v. Claussen,* 295 Minn. 96, 99, 203 N.W.2d 323, 325 (1972). To permit the City of Apple Valley to accelerate the elimination of Eaton's nonconforming use by requiring immediate compliance with Ordinance 515 would be to allow the City to achieve by zoning ordinance that which can be done only by eminent domain.

Of course, Ordinance 3 was in force when Eaton was built, and Eaton has always been subject to its requirements. Even though the City may not impose new limitations on Eaton, it is entitled to enforce the provisions

of Ordinance 3. It is SLS Partnership's position that the concrete pads fully comply with the setback requirements of Ordinance 3 and that the inquiry should end there, but those setback requirements refer to the trailer homes, not to the pads on which they rest. The setback requirements are concerned primarily with the spacing of the trailers—i.e., what is above ground level; the setbacks are designed to afford the residents of the park adequate light and air and to protect not only the health and safety of the park residents but also the aesthetic sensibilities of both park residents and the members of the surrounding community.

Therefore, we affirm that portion of the decision of the court of appeals quashing the writ of mandamus issued by the trial court, and we reverse the decision of the court of appeals authorizing enforcement of Ordinance 515 with respect to all mobile homes altered after April 23, 1991. We hold that all mobile homes, whether now or subsequently situated in Eaton Mobile Home Park, remain subject to the provisions of Ordinance 3. We note that the administration of zoning ordinances is a governmental function and that a "municipality cannot be estopped from correctly enforcing the ordinance even if the property owner relied to his detriment on prior city action." *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d at 607 (Minn.1980).

Affirmed in part and reversed in part.