**STILLWATER TOWNSHIP, Appellant,**

v.

**Burt RIVARD, et al., Respondents.**

No. C4–95–2287.

Court of Appeals of Minnesota.

May 21, 1996.

Thomas M. Scott, Campbell, Knutson, Scott & Fuchs, P.A., Eagan, for Appellant.

Gregory G. Galler, Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, Stillwater, for Respondents.

Considered and decided by AMUNDSON, P.J., and CRIPPEN and WILLIS, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Stillwater Township sought to enjoin respondents Burt and JoAlice Rivard from ongoing violations of the township zoning ordinance. The trial court entered judgment determining that appellant was estopped from enforcing its zoning restrictions that prevented respondents from continuing the present uses of their property. We reverse and remand for further findings of fact.

## FACTS

Respondents own a 24–acre parcel of land in Stillwater Township, Washington County, purchased in 1972. At the time of purchase, the property was zoned Residential/Agricultural B under Township Ordinance No. 17; permitted uses were one-family or two-family dwellings and their accessory buildings, and "farming or other agricultural purposes," a phrase not defined in the ordinance.

In 1980, the property was rezoned Residential ("R–1"). Permitted uses were agricultural (rural and suburban) and residential (single-family detached dwellings). Respondents agree that retail sales were prohibited under both Ordinance No. 17 and R–1 zoning. Nonetheless, respondents have conducted a retail sales business on their property since its purchase in 1972, a use that includes the sale of horses, tack (i.e. saddlepads, cinches, halters, leads, etc.), feed and wood shavings. At one point, respondents applied for a special use permit to sell and trade horses and to market tack, but the town board never issued them a permit.

Respondents' family home is located on the subject property, as is a barn, which was constructed under a building permit respondents obtained from appellant in 1972. The permit authorized construction of a barn to house livestock, but prohibited use of the barn for commercial purposes. The town clerk, upon the town board's direction, wrote a letter to respondents notifying them that "the buying and selling of any commodities such as feed, tack, gear, trailers, etc., is a violation of the ordinance whether related to livestock or not."[1] Notwithstanding these instructions, respondents have openly used the barn to sell and board horses and to market tack, horse bedding and horse feed.

Respondents store their horse bedding and feed, purchased off-site, in two commercially licensed trailers parked on their property. Respondents acknowledge that the external storing or parking of commercial trailers is not permitted in the R–1 district except when loading, unloading, or rendering service.

The township zoning ordinance also requires that all personal property stored on R–1 zoned property be kept in a building or fully screened from the view of adjoining properties and public streets. Respondents' trailers are not screened from view nor are the following items respondents store on their property: a pile of truck tires, a number of round rubber rolls, a horse ramp, cylindrical storage tanks 15 or more feet in height, a fuel tank, a horse trailer, a farm tractor, a brush hog, a small grader and a manure spreader.

According to zoning regulations, one horse per two acres of land may be kept on R–1 zoned property, permitting respondents to keep approximately 12 horses. Additional horses may be permitted pursuant to a conditional use permit, but respondents do not have such a permit. The number of horses housed on respondents' property has varied, but in some years respondents have traded

---

1. The Town Clerk's letter also indicated that "[t]he Town Board in an effort to protect you from putting any more of your money into a building that cannot be used for commercial purposes feels obliged to warn you of that fact" and that "commercial transactions, such as buying and selling of livestock * * * are considered by the Town Board to be a commercial operation and in violation of Ordinance # 17."

approximately 400 horses, keeping 20 to 30 horses on their property at one time.

In August 1989, respondents' property was inspected by a Washington County planner. The planner notified respondents of zoning violations, including retail sales and the parking of five semi-tractor trailers. After reinspecting respondents' property in September 1989, the planner notified appellant that the zoning violations had not been rectified. Appellant informed respondents they would be prosecuted if the zoning violations were not corrected by October 6, 1989. Since receiving appellant's notification, respondents have not materially changed the use of their property.

Appellant filed a criminal complaint against respondents in July 1991. In October 1991, the parties stipulated to continue the case for dismissal, provided that respondents kept their property free from trash and debris, removed the advertising sign on their property, and submitted an application for rezoning or ordinance text amendment by March 12, 1992.

In April 1992, respondents applied for a zoning ordinance text amendment/ conditional use permit to allow retail sales as an approved conditional use for a horse training and boarding facility. Appellant denied the application in July 1992, based on the recommendation of the planning commission, which suggested a Planned Unit Development Permit (PUD) would be more appropriate because it would avoid opening up the possibility of retail sales throughout the R–1 district. The criminal charges against respondents were subsequently dismissed pursuant to respondents' agreement to go forward with the PUD permit application process.

In October 1993, the township planning commission recommended approval of the preliminary PUD permit application in its minutes, but requested the following additional information:

a) describe the proposed commercial enterprise

b) propose an alternative to silver maples for year-round screening

c) hours of operation

d) is extended driveway (from house to barn) within the right-of-way of 80th street?

e) provide a detailed map showing the location of the various activities and where the hay bales are located

f) show the location on the site plan of the houses and their driveways of neighbors across 80th Street.

Respondents did not provide this information.

In April 1994, appellant filed this civil suit against respondents for continuing ordinance violations. On April 25, 1994, respondents submitted a PUD permit application by offering their preliminary PUD permit application. The township planning consultant notified respondents that this application was incomplete, as it failed to address the additional information requested by the planning commission in 1993. In December 1994, respondents filed a document titled "Final Application for a Planned Unit Development Permit," but did not include the requested additional information. In January 1995, the township planning consultant notified respondents that the additional information needed to be provided before their application could be processed. Respondents did not provide the requested information.

In May 1995, appellant moved to prohibit respondents from continuing to violate the township's zoning ordinance. The matter was submitted to the trial court on stipulated facts. The trial court concluded that appellant was estopped from enforcing any zoning restrictions that prevented respondents from continuing the present uses of their property, and the court ordered appellant to issue a Planned Unit Development Permit authorizing respondents' uses. In its findings of fact, the trial court also stated that the commercial activities of respondents (characterized by the trial court as an "agricultural retail sales business") were permitted as "farming and other agricultural purposes" under Township Ordinance No. 17, in effect in 1972.

## ISSUES

1. Is appellant estopped from enforcing pertinent zoning restrictions against respondents?

2. Is judgment for respondents sustainable because respondents' use was a permitted use in 1972?

3. Did the trial court grant relief prematurely when it held that respondents were entitled as a matter of law to a Planned Unit Development Permit authorizing the existing uses of their property?

## ANALYSIS

■■■ Where a case is decided on stipulated facts, the only issue on appeal is whether the trial court erred in its application of the law. *Fingerhut Corp. v. Suburban Nat'l Bank,* 460 N.W.2d 63, 65 (Minn.App.1990). A reviewing court need not defer to the trial court's application of the law when the material facts are not in dispute. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989).

### I. Estoppel

■■■ As a general rule, for estoppel to lie, "the plaintiff must demonstrate that the defendant, through his language or conduct, induced the plaintiff to rely, in good faith, on this language or conduct to his injury, detriment or prejudice." *Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980). In *Ridgewood,* a development company expended over $250,000 preparing for a construction project that it planned to fund through industrial revenue bonds prior to a change in state law that prohibited that type of financing. *Id.* at 291. The supreme court rejected the developer's equitable estoppel argument because there was no threshold showing of wrongful conduct by the government, noting "no government official has given improper advice." *Id.* at 293.

■■■ Similarly, respondents have failed this threshold test by neglecting to show wrongful government conduct other than an alleged period of government inaction. A mere lapse in time does not diminish a town's ability to enforce its zoning ordinances. In *SLS Partnership v. City of Apple Valley,* 511 N.W.2d 738 (Minn.1994), a city renewed a mobile home park's operating permit annually for over twenty years without strictly enforcing zoning provisions regarding mobile

home setbacks. *Id.* at 740. Nonetheless, the supreme court held that all mobile homes located in the park remained subject to the zoning ordinance's setback provisions.

We note that the administration of zoning ordinances is a governmental function and that a "municipality cannot be estopped from correctly enforcing the ordinance even if the property owner relied to his detriment on prior city action."

*Id.* at 743 (quoting *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 607 (Minn.1980)). *See John Wright & Assocs. v. City of Red Wing,* 254 Minn. 1, 8, 93 N.W.2d 660, 664–65 (1958) (illegal use of a building since its inception does not become legal simply by the passage of time); *see also Prior Lake Aggregates v. City of Savage,* 349 N.W.2d 575, 580 (Minn.App.1984) (following *Frank's Nursery Sales* in holding that a municipality could not be estopped from enforcing its zoning ordinances); 8A Eugene McQuillan, *The Law of Municipal Corporations* § 25.349 (3d ed.1994) (it is no defense to an injunctive suit that municipal authorities have done nothing about the alleged violation).

In *State v. Liepke,* 403 N.W.2d 252 (Minn. App.1987), where the trial court ruled that the city could not be estopped from enforcing its ordinance as a matter of law, this court remanded the case for an evidentiary hearing based on the *Ridgewood* holding. *Id.* at 256. *Liepke* involved a plaintiff who expended $30,000 on a building in reliance on a city-approved building permit and completed 90 percent of the building before the city determined that the plaintiff's proposed use was illegal. *Id.* at 253.

■■■ Although *Liepke* found that the trial court had erred in finding as a matter of law that a municipality could not be estopped from enforcing its zoning ordinance, *Liepke* did not dispute that a city may be estopped from enforcing its zoning regulations only if it has induced reliance wrongfully and if other *Ridgewood* requirements are met:

A party bringing a claim of estoppel against a governmental entity has a heavy burden of proof. The party must first show wrongful conduct on the part of the government. The party must also demon-

strate expenditures that are unique to the proposed project and would not be otherwise usable. If these elements are proved, the equities of the circumstances will be examined. The government will be estopped only if the equities advanced by the individual are sufficiently great to outweigh the public interest frustrated by the estoppel.

*Liepke,* 403 N.W.2d at 256 (citing *Ridgewood,* 294 N.W.2d at 292–93).

Respondents also argue that the trial court's holding is sustained by *Frank's Nursery Sales,* where the supreme court found that a retail business was a "lawn and garden center" within the meaning of the applicable zoning ordinance, notwithstanding the fact that the business sold some craft items. 295 N.W.2d at 609. But here, unlike *Frank's Nursery Sales,* many of respondents' uses of their property are not merely incidental to the agricultural purpose permitted in the zoning regulation. Moreover, the transaction of a variety of retail sales on respondents' property distorts the regulation's underlying policy and effect.

Because respondents have been unable to demonstrate anything more than government inaction, respondents have not met the heavy burden of proof necessary to justify further inquiry on the equities for estoppel. In addition, respecting the equities of the parties, respondents were specifically informed by appellant in 1972, shortly after they purchased their property, that retail sales were not permitted on their property. Finally, the record does not indicate that respondents made a substantial change in position evidenced by any significant capital expenditures relating to their retail operation that would now be lost by relocating their business or by using their property for alternate purposes.

## II. Permitted Use

■ In *Farmington Township v. High Plains Coop.,* 460 N.W.2d 56 (Minn.App. 1990), this court considered the definition of "agricultural" within the context of a zoning regulation, conducting a de novo review of the meaning of a zoning ordinance that allowed for farming and "similar agricultural related uses" as well as accessory uses "customarily incidental to" general farming. *Id.* at 57. Here, the township's prior Zoning Ordinance No. 17 allowed for "farming or other agricultural purposes."

Prior to *High Plains,* no Minnesota case law interpreted the meaning of "agricultural" within the context of zoning regulations. As a result, this court turned to an Iowa Supreme Court opinion considering whether the use of property solely for the raising of chickens for transfer to off-site egg-laying houses would make it "agricultural" and thus exempt from local zoning ordinances. *Id.* at 58 (citing *Farmegg Products v. Humboldt County,* 190 N.W.2d 454 (Iowa 1971)). This court noted:

> Settling on a useful test, the [*Farmegg Products*] court held that the proposed operation was organized and carried on as an independent productive activity and not as part of an agricultural function. Though the activity involved an agricultural topic and an agricultural enterprise, the [*Farmegg Products*] court also recognized that the property would not be equipped with the implements of farms and that no part of the operation would be used for produce or crop production.

*Id.* (citing *Farmegg Products,* 190 N.W.2d at 458–59).

Relying on the reasoning in *Farmegg Products,* the *High Plains* court found that a farmer-owned cooperative could not lease a 30,000 gallon tank to store liquid petroleum for supply to its members and nonmembers in a zoning district that permitted general farming and "similar agricultural related uses" as well as accessory uses "customarily incidental to" general farming. We explained:

> First, the High Plains Cooperative is clearly not a general farmer. Its operations * * * do not involve an agricultural topic nor an agricultural enterprise. Second, a 30,000 gallon tank is not a normal component of a farm operation. * * * Third, the activity here, like the activity in *Farmegg,* involves the enterprise of furnishing supplies for agricultural businesses. It is in the nature of an agricultural supply busi-

ness rather than agriculture itself. The business here serves many users other than the owner * * *.

*Id.*

Similarly, respondents are conducting an independent productive activity not carried on as part of an agricultural function. For instance, the parking of semi-trailers on respondents' property is not commensurate with crop and animal production and resembles the function of the liquid petroleum tank in *High Plains,* that is, the seemingly large-scale furnishing of supplies for persons other than the farm's owner. Respondents here are conducting a retail and supply business for the general public. In addition, stipulated facts demonstrate respondents' ongoing zoning violations in storing personal property and keeping too many horses.

Respondents contend that they are entitled to summary judgment based on the conclusion that their property uses are agricultural. This question is debated by the parties, and the trial court made a finding of fact that respondents' uses were permitted under Ordinance No. 17, but the issue was not conclusively resolved by the trial court. We find that the record does not permit a legal conclusion on this topic without further production of facts regarding the nature and volume of the various types of business activity conducted by respondents. On remand, the trial court must also conclude whether respondents' arguments on a previously permitted use are precluded by their stipulation (a) that a "retail sales use is not permitted" under Ordinance 17 and (b) that they "have operated a retail sales business" on the premises since 1972.

III. Planned Unit Development Permit

Appellant argues that the trial court erred by ordering it to issue a PUD permit to respondents, contending that the Town Board never denied respondents' PUD permit application, so that there is no final action for this court to review. *See* Minn.Stat. § 462.361, subd. 2 (1994) (exhaustion of remedies is required unless it would serve no useful purpose). The ordering of a PUD permit is inappropriate at the stage of proceedings indicated in the present record.

## DECISION

We reverse the judgment of the trial court on the issue of estoppel and remand for further findings on the issue of permitted use in order for the trial court to determine upon sufficient facts and the full presentation of evidence whether respondents' use was permitted under the applicable zoning regulations. The scope of the trial court proceedings will also include the matter of respondents' application for a PUD permit, particularly the questions of whether appellant has taken final action on the matter or if it is evident that the town refuses to act even after respondents have fully complied with the application process.