R.L. HEXUM & ASSOCIATES,
INC. et al., Appellants,

v.

ROCHESTER TOWNSHIP, BOARD
OF SUPERVISORS,
Respondent.

No. C0–99–1615.

Court of Appeals of Minnesota.

April 25, 2000.

Michael McCarthy and Howard Roston, Maslon, Edelman, Borman & Brand, Minneapolis, for appellants.

C. Todd Keobele, Peter B. Tiede, and Nancy A. Proffitt, Murnane, Conlin, White & Brandt, St. Paul, for respondent.

Considered and decided by RANDALL, Presiding Judge, AMUNDSON, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

AMUNDSON, Judge.

Appellants R.L. Hexum and Associates, Inc., and David T. Bishop challenge the district court's grant of summary judgment to respondent Rochester Township Board of Supervisors. Appellants argue that the district court erred in (1) concluding that the proposed use was consistent with local ordinances governing farming and uses "similar to" general farming and (2) precluding the submission of new evi-

dence during review of the municipal proceedings. We affirm.

## FACTS

In October 1997, Seneca Foods Corporation (Seneca) applied to the Rochester Township Planning and Zoning Commission (commission) for two conditional use permits to expand wastewater-spraying operations in connection with its canning plant. Seneca currently operates a similar "sprayfield" on a parcel of land in a district zoned A–4 (agricultural-urban expansion). On that parcel, Seneca sprays nitrogen-bearing wastewater collected from its plant, irrigating approximately 125 acres of land, which is planted primarily with long-season grasses. In addition to local zoning board approval, disposal of wastewater also requires a National Pollutant Discharge Elimination System/State Disposal System (NPDES/SDS) permit from the Minnesota Pollution Control Agency (MPCA). Seneca's 1997 conditional use permit (CUP) applications, which were consolidated into one permit covering three parcels, were intended to allow it to expand its sprayfield operations to two more parcels of land, also zoned A–4, adjacent to the existing sprayfield operated by Seneca since 1990.

Appellants R.L. Hexum and Associates, Inc., and David T. Bishop as trustee for the David T. Bishop Trust and the Beatrice H. Bishop Trust ("appellants") own property adjacent to the two parcels for which Seneca sought approval. Appellants' concern was that excess storm runoff due to increased groundwater saturation would have an adverse environmental impact. Appellants were also concerned about groundwater contamination and land use inconsistent with the surrounding area. Appellants and their attorney participated in all proceedings, commissioned engineering and hydrological reports, and provided experts and expert testimony. Appellants also hired a court reporter to record and transcribe each of the proceedings.

After two public hearings before the commission; a nonpublic hearing before the commission at which the commissioners questioned interested parties; and a public hearing before the board of supervisors, the commission accepted a staff report and recommendation to grant the CUP. The staff report and recommendation, upon which the commission based its decision, noted that the Olmsted County Land Use Plan, adopted by Rochester Township until the township could develop its own plan, encourages conservation practices such as sprayfields. Attached to the recommendation were reports from the Olmsted County Soil and Water District, the Minnesota Department of Transportation, the Olmsted County Planning Department, Northern Natural Gas, and the Olmsted County Environmental Commission. The staff report also noted that the Minnesota Department of Natural Resources and the MPCA had been consulted and provided comments. Some of the agencies submitted proposed conditions, but none recommended that the CUP be denied. The commission granted the CUP with thirteen conditions requiring that Seneca regularly monitor, test, and report on the impact of its activities. Appellants challenged the CUP before the Rochester Township Board of Supervisors (township board). The township board, after taking additional testimony, upheld the zoning commission's decision to grant the consolidated CUP. The township board concluded that Seneca's intended use of the parcels as sprayfields was "similar to farming" and was consistent with the land use plan.

Appellants challenged the CUP in district court, asking the court to consider information obtained in connection with Seneca's NPDES/SDS permit application to the MPCA—an application that was referred to in the conditions attached to the CUP, but which had never been made a part of the record by the township board or the zoning commission. Appellants also sought to introduce (1) Corporation/Limited Partnership Farming Reports submit-

ted to the Department of Agriculture by Seneca and (2) the MPCA's findings of fact and conclusions on appellants' request for an environmental assessment worksheet (EAW). The district court declined to consider evidence beyond the existing record, granted summary judgment for the township board, and upheld the determination that Seneca's proposed use of the land is permitted under the interim ordinance. This appeal followed.

## ISSUES

I. Did the district court err in concluding that Seneca's proposed land use was "similar to" general farming and permitted under the conditional use provisions of the interim ordinance adopted by the township?

II. Did the district court err in concluding that it was reasonable under the interim ordinance, for the township board to grant a conditional use permit to allow Seneca to spray nitrogen-bearing wastewater from a canning facility onto undeveloped land?

III. Did the district court err in excluding new evidence and limiting its review to the record?

## ANALYSIS

■ Summary judgment under Minn. R. Civ. P. 56.03 is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Where, as here, the parties agree that there are no material issues of fact, this court first conducts a de novo determination of whether the district court has correctly interpreted the ordinance, *Farmington Township v. High Plains Co-op.,* 460 N.W.2d 56, 58 (Minn.App.1990), giving only slight consideration to the interpretation by the governmental authority. *See Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980) (holding that opinions of governmental authority on legal questions, while entitled to

consideration, are not as persuasive as they would be on questions of fact).

## I.

Section 5.00 (A) of the interim ordinance pertains to "[g]eneral farming, including the raising of crops, livestock, poultry, dairying, horticulture, * * * and similarly agriculturally related uses." Olmsted County, Minn., Zoning Ordinance § 5.00(A)(3) (1995) [hereinafter Zoning Ord.]. Allowable conditional uses, which are governed by section 5.00(B)(16) (1995), include "[o]ther uses *similar to* those uses described * * * in Section 5.00(A)." Zoning Ord. § 5.00(B)(16) (emphasis added). Appellants argue that Seneca's use of the land is not similar to general farming and that the ordinance, properly interpreted, actually prohibits the use of sprayfields in areas zoned A–4.

■ In determining whether a city's interpretation of an ordinance is correct, courts generally "strive to construe a term according to its plain and ordinary meaning." *Frank's Nursery,* 295 N.W.2d at 608. Although the interim ordinance defines a "farm" as "[a] lot to be used for agricultural or horticultural uses," it does not specifically define "farming." Zoning Ord. § 2.02 (1995). Thus, appellants urge us to utilize the statutory definition of farming in provisions pertaining to corporate and partnership farming (CPF statute) and to find these provisions controlling. *See* Minn.Stat. § 500.24, subd. 2(a) (Supp.1999) (defining "farming" narrowly). Appellants argue that because Seneca's proposed land use does not fall within the statutory definition of farming and because the statute prohibits corporations from engaging in or owning farmland, the district court's conclusion that the proposed use was "similar to" general farming is contrary to law. Minn.Stat. § 500.24, subd. 3 (Supp.1999). Additionally, appellants argue that Seneca's use cannot be deemed similar to general farming because "spraying" is specifically excluded from the defi-

nition of farming in the CPF statute. Minn.Stat. § 500.24, subd. 2(a). But appellants' reference to the specific exclusion of "spraying or harvesting services" in the definition of farming in the CPF statute is misleading because that provision appears to address aerial crop spraying and not spraying of wastewater.

■ The CPF statute and the interim ordinance clearly have different purposes. The CPF statute was enacted to protect family farmers as a basic economic unit, but the interim ordinance was adopted to help guide a local governmental body in supervising and regulating land use within its jurisdiction. *See* Minn.Stat. § 500.24, subd. 1. (1998 & Supp.1999); Zoning Ord. § 1.02 (1995). It is undisputed that the CPF statute does not, in fact, apply. While it may have been reasonable for the township board to have used the CPF statute and its definition of farming as an aid in construing the plain and ordinary meaning of its own zoning ordinance, the township board chose not utilize that definition. The ordinance defines a "farm" as "[a] lot to be used for agricultural or horticultural uses." Failure to use that particular definition does not render the township board's interpretation per se unreasonable. Zoning Ord. § 2.02.

■ Under the plain and ordinary meaning of the words in the ordinance, "farming" would include using a lot for agricultural or horticultural purposes. We must decide whether the district court erred in concluding that the interpretation applied by the township board was reasonable. In so doing, we decline to restrict the township board's authority to construe its own ordinance and reject appellants' contention that Minn.Stat. § 500.24 should control the interpretation of the interim ordinance. Accordingly, we hold that the district court did not err in concluding that the township board's decision was reasonable.

■ Appellants also contend that the proposed use is within the ordinance's ex-clusion of "commercial or industrial uses primarily intended to serve agricultural uses." *See* Zoning Ord. § 5.08(B)(1) (1995) (excluding section 5.00(B)(10) from conditional uses in A–4 districts). In support of their contention, they note that the CUP was granted under section 5.08(B)(1), with reference to section 5.00(B)(16), a "catch-all" provision. Appellants object to the grant of the CUP under section 5.00(B)(16) and argue that section 5.00(B)(10) is a more specific and applicable provision. Noting that general rules of construction dictate that when provisions of a law are irreconcilable, specific provisions supersede more general ones, appellants reason that because section 5.00(B)(10) (commercial or industrial uses serving agriculture) is more specific, the township board should have classified Seneca's proposed use as an impermissible use under section 5.00(B)(10). *See* Minn.Stat. § 645.26 (1998) (stating rules of construction for irreconcilable statutory provisions).

Appellants' argument is flawed in two ways. First, the argument is circular; it assumes the proposed use *is* commercial or industrial and that it is *not* general farming or similar to general farming. Second, the canon of construction favoring the specific over the general is inapplicable because the provisions of the ordinance do not conflict. The classifications may be mutually exclusive but they are not irreconcilable. Section 5.08(B)(1) (referencing section 5.00(B)(10)) excludes certain commercial and industrial uses and section 5.08(B)(1) (referencing section 5.00(B)(16)) allows uses similar to farming. The township board and the district court properly concluded that Seneca's proposed use is similar to farming; they did not conclude that there is a prohibited commercial or industrial use.

Appellants also argue that this case is similar to *Farmington Township*, where this court determined that the maintenance and leasing of a 30,000 gallon liquid petroleum tank was not a component of general farming or an accessory use inci-

dental to farming. *Farmington Township,* 460 N.W.2d at 57–59. Analyzing an ordinance that allowed "general farming and similar agricultural related uses as well as accessory uses customarily incidental to general farming," this court asked whether leasing of the tank was organized and carried on as an independent activity or as part of an agricultural function. *Id.* at 58–59 (quotations omitted). Because the cooperative was not a general farmer and the tank was much larger than those normally used in farming operations, this court held that the lease arrangement was more analogous to agricultural supply and was not related to agriculture itself. *Id.*

As the district court observed, Seneca is actually cultivating the land by sowing grass seed, watering, and growing plants. *Farmington Township* is distinguishable because Seneca is actively engaged in agricultural activity on the affected land and is not in the business of agricultural supply. Nor is Seneca's irrigation via wastewater spraying an "independent productive activity" that is not part of the agricultural function on the land. *Cf. Stillwater Township v. Rivard,* 547 N.W.2d 906, 912 (Minn. App.1996) (conducting a retail and supply business for the public not engaging in "farming or other agricultural purposes"). Furthermore, whether Seneca harvests the plants or takes them to market is inconsequential; plowbacks, seedbanks, and windrows are examples of farming activities that do not result in the extraction of a product for human or livestock consumption. There is no need to render a crop to market for "farming" to occur.

Furthermore, regardless of whether Seneca's use fits under a narrow definition of farming, the ordinance states that uses similar to general farming are permitted conditional uses. *See* Zoning Ord. § 5.00(A)(3) (stating that uses similar to those in section 5.00(B) are conditional uses). The breadth of the language in the interim ordinance is also inconsistent with any narrow definition of farming. Given the admonition to apply the plain and ordinary meaning of the terms in the ordinance, the district court did not err in concluding that the township board's conclusion that Seneca's proposed use of the land, which includes cultivation of plants, is "similar to" what happens on a farm was not reasonable. The district court properly granted summary judgment to the township board.

## II.

■ Appellants contend that Seneca has made inconsistent claims in different statutory and regulatory settings about its proposed use of the land and that these inconsistent claims should preclude granting the CUP. Although the legal theory is not entirely clear, appellants may be attempting to argue that Seneca should be estopped from arguing that its intended use of the land is similar to farming. The evidence underlying this claim was excluded in the district court, but even if we were to consider it, we would conclude that appellants have not established the elements of either equitable or judicial estoppel. *Port Authority v. Harstad,* 531 N.W.2d 496, 500 (Minn.App.1995) (elements of judicial estoppel are that party previously convinced a court to adopt an earlier inconsistent position), *review denied* (Minn. June 14, 1995); *See McNattin v. McNattin,* 450 N.W.2d 169, 172 (Minn.App.1990) (elements of equitable estoppel are reasonable reliance resulting in harm).

■ It may be more appropriate to consider appellants' argument as a challenge to the reasonableness of the township board's action. *See Swanson v. City of Bloomington,* 421 N.W.2d 307, 310–11 (Minn.1988) (characterizing standard of review in zoning matters as "reasonable basis," "unreasonable, arbitrary or capricious," or "reasonably debatable"). In special use cases such as this, reasonableness is measured by the standard contained in the applicable ordinance. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 417 (Minn.1981).

The overall purpose of the interim ordinance is:

> to implement the Comprehensive Plans, and to promote and protect the health, safety, and general welfare throughout Olmsted County by lessening congestion in the public right-of-ways; securing safety from fire, panic, and other dangers; providing adequate light and air; facilitating the adequate provision of water, sewerage, and other public facilities; conserving the value of properties and encouraging the most appropriate use of the land; and to protect the environment.

Zoning Ord. § 1.02. Under the interim ordinance, conditional uses are designed to "permit a use that would not be appropriate generally but may be allowed with appropriate restrictions" under certain conditions consistent with the comprehensive plans and compatible with existing uses in the area. Zoning Ord. at 4.02 (1995). The purpose of the A–4 Agricultural–Urban Expansion District designation is to

> provide for urban expansion in close proximity to existing incorporated urban centers within Olmsted County, in accordance with the adopted Comprehensive Plan, by conserving land for farming and other open space land uses for a period of time until urban services become available. It is the intent that urban development be deferred in such areas until an orderly transition from farm to urban uses shall be achieved.

Zoning Ord. § 5.08.

Applying the standards stated in these sections, we conclude that the township board's issuance of the CUP is reasonable and not arbitrary or capricious. There is ample evidence in the record that the sprayfields would not be inconsistent with the policies and purposes of the interim ordinance. *See Swanson,* 421 N.W.2d at 314 (finding a decision reasonable when city council's findings are supported by the evidence). Sprayfields are designed to encourage conservation practices, recycle water, return nutrients to the land, and prevent erosion. By increasing the acreage of available sprayfields, Seneca hoped to vary application of the wastewater to account for changing atmospheric and surface conditions and to allow for rotation and rest-recovery periods for the parcels.

The record is detailed and complete. The township board made contemporaneous findings and addressed all of the relevant provisions in sections 4.02 and 5.08 of the interim ordinance. The township board did not disregard appellants' concerns about storm runoff and groundwater effects: it imposed thirteen conditions on the CUP requiring monitoring, testing, and reporting. *Benton Township v. Carver County Bd. of Comm'rs,* 302 Minn. 493, 498–99, 225 N.W.2d 815, 818–19 (upholding municipality's decision absent evidence that proposed use would be injurious to public health, safety, or welfare and when conditions attached to permit adequately addressed issues raised in opposition). After multiple public hearings, expert testimony, consultation with other local and state agencies, and consideration of geologic and hydrologic reports, the township board concluded that granting Seneca a CUP to operate sprayfields would not adversely affect the covered parcels, the surrounding land, and would not offend the stated policies of the interim ordinance. The township board's grant of the CUP to Seneca was reasonable and supported by the evidence.

### III.

 Finally, appellants argue that the district court erred in limiting its review to the existing record and not accepting new evidence. We disagree. In deciding whether to accept new evidence, a district court should consider

> the nature, fairness and adequacy of the proceeding at the local level and the adequacy of the factual and decisional record of the local proceeding. Where the municipal proceeding was fair and

the record clear and complete, review should be on the record.

*Swanson,* 421 N.W.2d at 312–13.

■ Appellants assert various theories about the fairness of excluding the MPCA documents and other items. We conclude that the district court did not err in limiting its review to the record before it. Appellants had ample opportunity to present evidence before the township board made its decision and their submissions were included in the record provided to the district court. All of the proceedings were recorded and transcribed. The township board made contemporaneous findings, incorporated a staff report and recommendation that included response letters from government agencies, and imposed thirteen conditions on the CUP. Therefore, the available record was clear and complete. *See id.* at 313 (stating that a record is likely to be clear and complete when accompanied by contemporaneous findings and an accurate transcript). Additionally, the proceedings were fair because appellants and their counsel participated fully, the evidence appellants sought to introduce was either available and failure to present it was without good cause, or the evidence was immaterial. *See id.* (holding that in order to supplement the record on review, a party must offer good reasons for failure to present it below; a district court need not accept immaterial evidence). Because the existing record was clear and complete and the proceedings were fair, the district court did not err in conducting its review on the record.

### DECISION

The district court did not err in granting summary judgment and it properly conducted its review on the record before it.

**Affirmed.**